Chaiyarat SERMCHIEF, et al.,
Appellants,

v.

Mario GONZALES, et al., Respondents,

and

State of Missouri, Intervenor-Respondent.

No. 64692.

Supreme Court of Missouri,
En Banc.

Nov. 22, 1983.

Frank Susman, Roselee Adlin, Stephen G. Hamilton, Susan Schermer, St. Louis, for appellants.

Michael Wolff, St. Louis, Richard S. Brownlee, III, Jefferson City, Gene P. Schultz, St. Louis, Dara Klassel, Eve W. Paul, New York City, Elizabeth D. Badger, Kansas City, John Ashcroft, Atty. Gen., Sara Rittman, Asst. Atty. Gen., Jefferson City, Patricia M. Nagel, St. Louis, Paul L. Bradshaw, Jean Paul Bradshaw, Spring-

field, David J. Kornelis, Edward W. Kriss, Kansas City, Michael R. Nack, Clayton, Robert R. Northcutt, Dept. of Social Services, Jefferson City, for amicus curiae.

David Brydon, James Swearengen, Johnny K. Richardson, Mark W. Comley, Jefferson City, for respondents.

John Ashcroft, Atty. Gen., Paul M. Spinden, Asst. Atty. Gen., Jefferson City, for intervenor-respondent.

WELLIVER, Judge.

This is a petition for a declaratory judgment and injunction brought by two nurses and five physicians [1] employed by the East Missouri Action Agency (Agency) wherein the plaintiff-appellants ask the Court to declare that the practices of the Agency nurses are authorized under the nursing law of this state, § 335.016.8, RSMo 1978 [2] and that such practices do not constitute the unauthorized practice of medicine under Chapter 334 relating to the Missouri State Board of Registration For the Healing Arts (Board). The petition further requests that the Board be enjoined from taking any steps, either civil or criminal, to enforce the unauthorized practice of medicine provision of § 334.010 against these parties. The holding below was against appellants who make direct appeal to this Court alleging that the validity of the statutes is involved. Mo. Const. art. V, § 3. While the case may involve no more than application of the statutes, we retain jurisdiction because of the general interest in this matter. Mo. Const. art. V, § 4. We reverse.

I

The facts are simple and for the most part undisputed. The Agency is a federally tax exempt Missouri not-for-profit corporation that maintains offices in Cape Girardeau (main office), Flat River, Ironton, and Fredericktown. The Agency provides medical services to the general public in fields of family planning, obstetrics and gynecology.

The services are provided to an area that includes the counties of Bollinger, Cape Girardeau, Perry, St. Francis, Ste. Genevieve, Madison, Iron and Washington. Some thirty-five hundred persons utilized these services during the year prior to trial. The Agency is funded from federal grants, Medicaid reimbursements and patient fees. The programs are directed toward the lower income segment of the population. Similar programs exist both statewide and nationwide.

Appellant nurses Solari and Burgess are duly licensed professional nurses in Missouri pursuant to the provisions of Chapter 335 and are employed by the Agency. Both nurses have had post-graduate special training in the field of obstetrics and gynecology. Appellant physicians are also employees of the Agency and duly licensed to practice medicine (the healing arts) pursuant to Chapter 334. Respondents are the members and the executive secretary of the Missouri State Board of Registration for the Healing Arts (Board) and as such are charged with the enforcement, implementation, and administration of Chapter 334.

The services routinely provided by the nurses and complained of by the Board included, among others, the taking of history; breast and pelvic examinations; laboratory testing of Papanicolaou (PAP) smears, gonorrhea cultures, and blood serology; the providing of and giving of information about oral contraceptives, condoms, and intrauterine devices (IUD); the dispensing of certain designated medications; and counseling services and community education. If the nurses determined the possibility of a condition designated in the standing orders or protocols that would contraindicate the use of contraceptives until further examination and evaluation, they would refer the patients to one of the Agency physicians. No act by either nurse is alleged to have caused injury or damage to any person. All acts by the nurses were done pursuant to

---

1. The physicians are joined for the reason that they are charged with aiding and abetting the unauthorized practice of medicine by the nurses.

2. All references are to RSMo 1978 unless otherwise indicated.

written standing orders and protocols signed by appellant physicians. The standing orders and protocols were directed to specifically named nurses and were not identical for all nurses.

The Board threatened to order the appellant nurses and physicians to show cause why the nurses should not be found guilty of the unauthorized practice of medicine and the physicians guilty of aiding and abetting such unauthorized practice. Appellants sought Court relief in this proceeding.

The trial can be capsulized by saying that the foregoing facts were either stipulated or agreed to by all parties. The appellants, in addition to the two nurses and the director of the Agency, called four witnesses who were permitted to express their opinion that the nurses' described acts were within § 335.016.8. The four witnesses called by appellants were, Phyllis Drennan, Dean of Nursing, University of Missouri-Columbia; Sallye Brown, Director of the Nurses Association of the American College of Obstetricians and Gynecologists; Sister Jeanne Meurer, Director of St. Louis University Graduate Program in Nurse Midwifery and Director of Nurse Midwifery, Department of Health and Hospitals, St. Louis; and Dr. Lawrence Kahn, Director of Nurse Practitioner Program, Washington University, St. Louis. Respondents called Dr. Hubert Ritter, Chairman of the obstetrics-gynecology (OBGYN) unit of St. Louis University; Dr. Raymond Ritter, a Cape Girardeau physician, practicing general and traumatic surgery and a former member of the Board of Healing Arts; and Dr. Kathleen LeVeck, a former nurse and 1980 graduate of St. Louis University Medical School, now in residency in OBGYN at St. Louis University Hospitals, all of whom expressed the view that the acts of the nurses were outside the contemplation of § 335.016.8 and constituted the practice of medicine prohibited by § 334.010. Virtually all of the admitted testimony of these seven witnesses consisted of their opinion of what the trial court described in its memorandum opinion as the ultimate issues for determination:

A. Does the conduct of plaintiff nurses Solari and Burgess constitute "Professional Nursing" as that term is defined in § 335.016.8, RSMo?

B. If the Court finds and concludes that any act or acts of plaintiff nurses Solari and Burgess does not or do not constitute(s) "professional nursing" and, constitutes the unauthorized practice of medicine under § 334.010, RSMo the Court must then determine if § 334.010, RSMo is unconstitutionally vague and uncertain on its face and, thus, is in violation of the specificity requirements of the Fifth and Fourteenth Amendments to the United States Constitution and of Article 1, § 10 of the Missouri Constitution.

All of appellants offers to prove the general practices of nursing, national or other recognized guidelines and standards for nursing, or the legislative intent with reference to the 1975 revision of the Nursing Practice Act, Chapter 335, were overruled by the trial court.

In our opinion the trial court correctly defined the issues of the case, both of which we deem to be matters of law to be determined by the Court. The trial court then made extensive findings of fact, the first nine denominated as stipulated and undisputed facts and the last nine denominated as controverted facts. The last nine findings are:

10. Pursuant to the standing orders and protocols (Joint Exhibits 3, 4 and 5), plaintiffs Burgess and Solari provided oral contraceptives, IUD's and vaginal medications to their patients.

11. Providing oral contraceptives, IUD's and vaginal medications is the administration of medications and treatments.

12. Plaintiffs Burgess and Solari administered these medications and treatments which were not prescribed by a person licensed in this state to prescribe such medications and treatments.

13. Plaintiffs Burgess and Solari performed pelvic examinations and based upon their findings, attempted to diag-

nose the existence or nonexistence of contraindications to the use of oral contraceptives, IUD's and vaginal medications, set out in their standing orders and protocols (Joint Exhibits 3, 4 and 5).

14. Graduation from a school of medicine or a school of osteopathy is a prerequisite for one to be capable of interpreting the results of a pelvic examination.

15. The State Board of Nursing regulations do not require professional nursing programs to include courses in pathology or physical diagnosis.

16. The acts of plaintiffs Burgess and Solari in utilizing the findings derived from pelvic examinations which they performed to attempt to diagnose the existence or nonexistence of contraindications to the use of oral contraceptives, IUD's and vaginal medications, require an individual to draw upon education, judgment and skill based upon knowledge and application of principles in addition to and beyond biological, physical, social and nursing sciences.

17. The acts of plaintiffs Burgess and Solari in administering oral contraceptives, IUD's and vaginal medications, without the same being prescribed by a person licensed in this state to prescribe such medications and treatments, require an individual to draw upon education, judgment and skill based upon knowledge and application of principles in addition to and beyond biological, physical, social and nursing sciences.

18. The conduct of plaintiffs Burgess and Solari in utilizing the findings derived from pelvic examinations which they performed to attempt to diagnose the existence or nonexistence of contraindications to the use of oral contraceptives, IUD's and vaginal medications, as described in their standing orders and protocols (Joint Exhibits 3, 4 and 5), constitutes medical diagnosis and not nursing diagnosis.

Findings 10, 13 and 15 appear to be undisputed in the record. Whether the acts referred to in findings 11, 12, 16, 17, and 18, all of which are admitted and undisputed, can be performed pursuant to standing orders and protocols signed by a licensed physician as opposed to, under supervision of a licensed physician, we deem to be a matter of law for determination by the court. Whether findings 14 and 16 are supported by substantial evidence is a question for consideration only if the Court determines as a matter of law that these findings are necessary to the interpretation of § 335.016.8 and § 334.010 and § 334.155.

Following the findings the trial court stated that "[t]he preceding findings were arrived at by the Court after considering and weighing all of the evidence. In reaching its findings, the Court specifically found that the more credible evidence was presented by defendants' witnesses." This case being a court tried case, the decision must be reversed on appeal if "there is no substantial evidence to support it, ... it is against the weight of the evidence, ... it erroneously declares the law, or ... it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and Rule 73.01. *Murphy* neither contemplated binding an appellate court by the co-mingling of law and fact nor by denominating as facts findings which are matters of law. In a case so hotly contested where both sides presented witnesses of such unquestionable professional stature, the broad labeling of one side's evidence as "more credible" tends to render the "specifically found credibility" suspect. We do no violence to the teachings of *Murphy* or Rule 73.01, but rather reaffirm the viability of both and proceed to decide the ultimate matters of law above defined.

## II

The appeal of this case attracted amici briefs resembling a letter writing campaign directed at a legislative body.[3] The amici

---

**3.** Letters received in the Court were returned to the senders by the Clerk advising that they had not been read by the Court for the reason that justice requires that the Court limit its consideration to matters of record before the Court.

are listed in Appendix A to this opinion. It suffices to say that those briefs detailed the historical development of the nursing profession and the nurses expanding role in the delivery of health services, the reality of which both the Court and the public take notice. Many expressed their opinions as to how we should construe our Missouri statutes, a matter which we are obligated to do in accordance with long established rules of statutory construction. "[T]he construction of a statute is a question of law." *Staley v. Missouri Director of Revenue,* 623 S.W.2d 246, 248 (Mo. banc 1981).

In passing it might be noted that the volume of amici briefs, reflected both herein and in other cases pending before the Court, highlight the growing need for consideration by the Court of a rule relating to the filing of amici briefs in order that the Court may avoid the appearance of becoming victim to a bombardment of amici briefs.[4]

### III

The statutes involved are:

It shall be unlawful for any person not now a registered physician within the meaning of the law to practice medicine or surgery in any of its departments, or to profess to cure and attempt to treat the sick and others afflicted with bodily or mental infirmities, or engage in the practice of midwifery in this state, except as herein provided.

Section 334.010.

This Chapter does not apply to dentists licensed and lawfully practicing their profession within the provisions of chapter 332, RSMo; *to nurses licensed and lawfully practicing their profession within the provisions of chapter 335, RSMo;* to optometrists licensed and lawfully practicing their profession within the provisions of chapter 336, RSMo; to pharmacists licensed and lawfully practicing their profession within the provisions of chapter 338, RSMo; to podiatrists licensed and lawfully practicing their profession within the provisions of chapter 330, RSMo; or to chiropractors licensed and lawfully practicing their profession within the provisions of chapter 331, RSMo.

Section 334.155, RSMo Supp.1982 (emphasis added).

Definitions.—As used in sections 335.-011 to 335.096, unless the context clearly

---

**4.** In the past the Court, almost without limitation, permitted the filing of briefs labeled "amicus curiae", when in most instances they were the briefs of advocates. The only reference to amici briefs in the current rules of this Court appears in the commentary following Canon 3 A(4) of the Missouri Code of Judicial Conduct: "An appropriate and often desirable procedure for a court to obtain the advice of a disinterested expert on legal issues is to invite him to file a brief *amicus curiae.*"

The federal courts and many states have adopted rules that limit the circumstances under which an interested third party may file a brief as an amicus curiae. These rules typically limit the filing of amici briefs to instances when all parties to the case consent to the filing or upon permission of the court after the amicus curiae demonstrates that facts or questions of law relevant to the case have not been adequately presented by the parties. *See, e.g.,* U.S. Supreme Court Rule 36:

2. A brief of an *amicus curiae* in a case before the Court for oral argument may be filed when accompanied by written consent of all parties to the case and presented within the time allowed for the filing of the brief of the party supported and if in support of neither party, within the time allowed for filing appellant's or petitioner's brief. Any such brief must identify the party supported, shall be as concise as possible, and in no event shall exceed 30 pages in length. No reply brief of an *amicus curiae* will be received.

3. When consent to the filing of a brief of an *amicus curiae* in a case before the Court for oral argument is refused by a party to the case, a motion for leave to file, accompanied by the proposed brief, complying with the 30-page limit, may be presented to the Court. No such motion shall be received unless submitted within the time allowed for the filing of an *amicus* brief on written consent. The motion shall concisely state the nature of the applicant's interest, set forth facts or questions of law that have not been, or reasons for believing that they will not adequately be, presented by the parties, and their relevancy to the disposition of the case; and it shall in no event exceed five pages in length. A party served with such motion may seasonably file an objection concisely stating the reasons for withholding consent.

requires otherwise, the following words and terms shall have the meanings indicated:

. . . .

(8) "Professional nursing" is the performance for compensation of any act which requires substantial specialized education, judgment and skill based on knowledge and application of principles derived from the biological, physical, social and nursing sciences, including, but not limited to:

(a) Responsibility for the teaching of health care and the prevention of illness to the patient and his family; or

(b) Assessment, nursing diagnosis, nursing care, and counsel of persons who are ill, injured or experiencing alterations in normal health processes; or

(c) The administration of medications and treatments as prescribed by a person licensed in this state to prescribe such medications and treatments; or

(d) The coordination and assistance in the delivery of a plan of health care with all members of the health team; or

(e) The teaching and supervision of other persons in the performance of any of the foregoing;

Section 335.016.8(a)–(e).

At the time of enactment of the Nursing Practice Act of 1975, the following statutes were repealed:

2. A person practices professional nursing who for compensation or personal profit performs, *under the supervision and direction of a practitioner authorized to sign birth and death certificates,* any professional services requiring the application of principles of the biological, physical or social sciences and nursing skills in the care of the sick, in the prevention of disease or in the conservation of health.

Section 335.010.2, RSMo. 1969 (emphasis added).

Nothing contained in this chapter shall be construed as conferring any authority on any person to practice medicine or osteopathy or to undertake the treatment or cure of disease.

Section 335.190, RSMo 1969.

The parties on both sides request that in construing these statutes we define and draw that thin and elusive line that separates the practice of medicine and the practice of professional nursing in modern day delivery of health services. A response to this invitation, in our opinion, would result in an avalanche of both medical and nursing malpractice suits alleging infringement of that line and would hinder rather than help with the delivery of health services to the general public. Our consideration will be limited to the narrow question of whether the acts of these nurses were permissible under § 335.016.8 or were prohibited by Chapter 334.

 In analyzing this question, we are guided by well-established rules of statutory construction. Fundamentally, we seek to ascertain the intent of the lawmakers and to give effect to that intent. *Citizens Bank & Trust Company v. Director of Revenue,* 639 S.W.2d 833, 835 (Mo.1982); *State v. Kraus,* 530 S.W.2d 684, 685 (Mo. banc 1975). A court normally accomplishes this task by attributing to the words used in the statute their plain and ordinary meaning. *Bank of Crestwood v. Gravois Bank,* 616 S.W.2d 505, 510 (Mo. banc 1981); *Kieffer v. Kieffer,* 590 S.W.2d 915, 918 (Mo. banc 1979); *Beiser v. Parkway School District,* 589 S.W.2d 277, 280 (Mo. banc 1979); *State ex rel. Conservation Commission v. LePage,* 566 S.W.2d 208, 212 (Mo. banc 1978). Legislative intent and the meaning of words used in the statute also can be derived from the general purposes of the legislative enactment. *Eminence R–1 School District v. Hodge,* 635 S.W.2d 10, 13 (Mo.1982); *Bank of Crestwood* at 510. Further insight into the legislature's object can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of enactment. *Kieffer* at 918; *State ex rel. Zoological Park Subdistrict of the City and County of St. Louis v. Jordan,* 521 S.W.2d 369, 372 (Mo.1975); *Mashak v. Poelker,* 367 S.W.2d 625, 626 (Mo.

banc 1963). An amended statute, such as § 335.016.8, should be construed on the theory that the legislature intended to accomplish a substantive change in the law. *City of Willow Springs v. Missouri State Librarian,* 596 S.W.2d 441, 444 (Mo. banc 1980); *Kilbane v. Director of the Department of Revenue,* 544 S.W.2d 9, 11 (Mo. banc 1976); *Gross v. Merchants-Produce Bank,* 390 S.W.2d 591, 597 (Mo.App.1965). Finally, "all provisions of a statute must be harmonized and every word, clause, sentence, and section thereof must be given some meaning." *Staley,* 623 S.W.2d at 250.

■ The legislature substantially revised the law affecting the nursing profession with enactment of the Nursing Practice Act of 1975.[5] Perhaps the most significant feature of the Act was the redefinition of the term "professional nursing," which appears in § 335.016.8. Even a facile reading of that section reveals a manifest legislative desire to expand the scope of authorized nursing practices. Every witness at trial testified that the new definition of professional nursing is a broader definition than that in the former statute. A comparison with the prior definition vividly demonstrates this fact. Most apparent is the elimination of the requirement that a physician directly supervise nursing functions. Equally significant is the legislature's formulation of an open-ended definition of professional nursing. The earlier statute limited nursing practice to "services . . . in the care of the sick, in the prevention of disease or in the conservation of health." § 335.010.2, RSMo 1969. The 1975 Act not only describes a much broader spectrum of nursing functions, it qualifies this description with the phrase "including, but not limited to." We believe this phrase evidences an intent to avoid statutory constraints on the evolution of new functions for nurses deliverying health services. Under § 335.016.8, a nurse may be permitted to assume responsibilities heretofore not considered to be within the field of professional nursing so long as those responsibilities are consistent with her or his "specialized education, judgment and skill based on knowledge and application of principles derived from the biological, physical, social and nursing sciences." § 335.016.8.

■ The acts of the nurses herein clearly fall within this legislative standard. All acts were performed pursuant to standing orders and protocols approved by physicians. Physician prepared standing orders and protocols for nurses and other paramedical personnel were so well established and accepted at the time of the adoption of the statute that the legislature could not have been unaware of the use of such practices. We see nothing in the statute purporting to limit or restrict their continued use.

Respondents made no challenge of the nurses' level of training nor the degree of their skill. They challenge only the legal right of the nurses to undertake these acts. We believe the acts of the nurses are precisely the types of acts the legislature contemplated when it granted nurses the right to make assessments and nursing diagnoses. There can be no question that a nurse un-

5. The impetus for the legislation was the ongoing expansion of nursing responsibilities. Several national commissions investigated the causes of and the implications of this phenomenon during the early 1970's. One committee concluded: "Professional nursing . . . is in a period of rapid and progressive change in response to the growth of biomedical knowledge, changes in patterns of demand for health services, and the evolution of professional relationships among nurses, physicians and other health professions." Secretary's Committee to Study Extended Roles for Nurses, Dep't. of Health, Education and Welfare, Pub. No. (HSM) 73–2037, "Extending the Scope of Nursing Practice: A Report of the Secretary's Committee to Study Extended Roles for Nurses" 8 (1971). *See also* National Comm'n for the Study of Nursing and Nursing Education, An Abstract for Action (1970); National Comm'n for the Study of Nursing and Nursing Education, From Abstract Into Action (1973). The broadening of nursing roles necessitated altering existing nursing practice laws to reflect the changes in a nurse's professional duties. At the time the Missouri legislature acted, thirty states had amended their laws regulating the nursing profession. *See* Comment, "Interpreting Missouri's Nursing Practice Act," 26 St. Louis U.L.J. 931, 931 n. 1 (1982). Forty states currently have broadened nursing practice statutes similar to § 335.016.8. *See infra* note 6.

dertakes only a nursing diagnosis, as opposed to a medical diagnosis, when she or he finds or fails to find symptoms described by physicians in standing orders and protocols for the purpose of administering courses of treatment prescribed by the physician in such orders and protocols.

The Court believes that it is significant that while at least forty states [6] have modernized and expanded their nursing practice laws during the past fifteen years neither counsel nor the Court have discovered any case challenging nurses' authority to act as the nurses herein acted.

The broadening of the field of practice of the nursing profession authorized by the legislature and here recognized by the Court carries with it the profession's responsibility for continuing high educational standards and the individual nurse's responsibility to conduct herself or himself in a professional manner. The hallmark of the professional is knowing the limits of one's professional knowledge. The nurse, either upon reaching the limit of her or his knowledge or upon reaching the limits prescribed for the nurse by the physician's standing orders and protocols, should refer the patient to the physician. There is no evidence that the assessments and diagnoses made by the nurses in this case exceeded such limits.

In preparing this opinion, the Court did considerable research and reading in medical libraries. We find nothing in our construction of the statutes that is incompatible with the history and development of the profession of nursing, the general standards of state and national nursing organizations and associations, the utilization of special nursing services by the Federal and State governments in the delivery of health services, or the utilization of nursing services by schools, factories, homes for the aging and our hospitals.

Having found that the nurses' acts were authorized by § 335.016.8, it follows that such acts do not constitute the unlawful practice of medicine for the reason that § 334.155 makes the provisions of Chapter 334 inapplicable "to nurses licensed and lawfully practicing their profession within the provisions of Chapter 335 RSMo."

This cause is reversed and remanded with instructions to enter judgment consistent with this opinion.

HIGGINS, GUNN and DONNELLY, JJ., and MORGAN, Senior Judge, concur.

RENDLEN, C.J., concurs in result.

BLACKMAR, J., concurs except as to Part II.

BILLINGS, J., not sitting.

*Appendix A*

American Nurses' Association

The Nurses' Association of the American College of Obstetrics and Gynecology

---

**6.** Ala.Code § 34–21–1(3) (1975); Alaska Stat. § 08.68.410(8) (1983); Ariz.Rev.Stat.Ann. § 32–1601.5 (Supp.1983–84); Cal.Bus. & Prof. Code § 2725 (Supp.1983); Colo.Rev.Stat. § 12–38–104(10) (Supp.1982); Fla.Stat.Ann. § 464.-003(3)(a),–(c) (1981 & Supp.1983); Ga.Code Ann. § 43–26–1(3) (1982); Hawaii Rev.Stat. § 457–2(2) (1976); Idaho Code § 54–1402(b)(1) (1979); Ill.Ann.Stat. ch. 111, ¶ 3405, § 4 (Smith-Hurd Supp.1983–84); Ind.Code Ann. § 25–23–1–1(b) (1982); Iowa Code Ann. § 152.1.2 (West Supp.1983–84); Kan.Stat.Ann. § 65–1113(d) (1980); Ky.Rev.Stat. § 314.011(5) (1983); La.Rev.Stat.Ann. § 37:913(3) (West Supp.1983); Me.Rev.Stat.Ann. tit. 32, § 2102.2 (1978); Md.Health Occ.Code Ann. § 7–101(f) (Supp.1983); Mass.Ann.Laws ch. 112, § 80B (Michie/Law Co-op. Supp.1983); Mich.Comp. Laws Ann. § 333.17201(1)(a) (1980); Minn. Stat.Ann. § 148.171(3) (Supp.1983); Miss.Code Ann. § 73–15–5(2) (Supp.1982); Mont.Code Ann. § 37–8–102(3)(a) (1983); Neb.Rev.Stat. § 71–1, 132.05(3)–(4) (Cum.Supp.1980); Nev. Rev.Stat. § 632.010.7 (1981); N.H.Rev.Stat. Ann. § 326–B:2 V (Supp.1981); N.J.Stat.Ann. § 45:11–23 b (1978); N.M.Stat.Ann. § 61–3–3 A (Supp.1983); N.Y.Educ.Law § 6902.1 (Supp. 1982–83); N.C.Gen.Stat. § 90–171.20(4) (Supp. 1981); N.D.Cent.Code § 43–12.1–02.5 (1978); Or.Rev.Stat. § 678.010(6) (1981); Pa.Stat.Ann. tit. 63, § 212(1) (Purdon Supp.1983–84); R.I. Gen.Laws § 5–34–3(f) (Supp.1982); S.C.Code Ann. § 40–33–10(f) (Law.Co-op.1977); S.D. Codified Laws Ann. § 36–9–3 (1977); Tex.Rev. Civ.Stat.Ann. art. 4518, § 5 (Vernon Supp. 1982–83); Utah Code Ann. § 58–31–4(4) (Supp.1981); Vt.Stat.Ann. tit. 26, § 1572(2) (Supp.1983); Wash.Rev.Code Ann. § 18.88.030 (Supp.1983–84); Wyo.Stat. § 33–21–101(a)(i) (1977).

The Missouri Association of Nurse Anesthesists

The Missouri Perinatal Association

The National Perinatal Association

The American College of Nurse Midwives

The Primary Care Council of Metropolitan St. Louis, Inc.

The Missouri Association of Administrators of Baccalaureate and Higher Degree Programs in Nursing

The American Association of Critical-Care Nurses

The Greater Kansas City Collegiate Nurse Educators

The Association of Rehabilitation Nurses

The Oncology Nursing Society

The Missouri Association for Social Welfare

The St. Louis Regional and Child Health Council, Inc.

The Cape Girardeau County Nursing Service

The Big Springs Medical Association

Missouri State Board of Nursing

Planned Parenthood Federation of America, Inc.

National Family Planning and Reproductive Health Association, Inc.

The American Public Health Association

The Association of Planned Parenthood Professionals, Inc.

National Association of Nurse Practitioners in Family Planning, Inc.

Missouri Association of Planned Parenthood Affiliates, Inc.

Rocky Mountain Planned Parenthood, Inc.

Missouri Family Planning Association, Inc.

Development Systems, Inc.

Missouri Hospital Association

Missouri Nurses Association

Missouri Society of Hospital Pharmacists

Missouri Student Nurses' Association

The Missouri League for Nursing

The National Association of Pediatric Nurse Associates and Practitioners

The Missouri Association of Home Health Agencies

The Missouri Public Health Association

Nurse Educators for Action

Missouri State Medical Association

The following faculty members of the University of Missouri-Columbia School of Medicine, Columbia, Missouri:

Charles C. Lobeck, M.D., Dean of the School of Medicine

David Hall, M.D., Chairman and Professor of the Department of Obstetrics and Gynecology

Jerry A. Royer, M.D., Associate Dean, Associate Professor of Department of Family and Community Medicine

Gerald T. Perkoff, M.D., Associate Chairman and Curators Professor of The Department of Medicine

Stanley N. Graven, M.D., Professor of Department of Child Health

Georgia B. Nolph, M.D., Associate Professor of Department of Family and Community Medicine

William Francis Birkby, M.D., Assistant Professor of Department of Family and Community Medicine

Michael Avery Crouch, M.D., M.S.P.H., Assistant Professor of Department of Family and Community Medicine

Harold Allen Williamson, Jr., M.D., Assistant Professor of Department of Family and Community Medicine

Robert L. Freperickson, M.D., Member of Department of Family and Community Medicine

Douglas Bradley, M.D., Chief Resident of Department of Family and Community Medicine

The following faculty members of the University of Missouri-Kansas City School of Medicine, Kansas City, Missouri:

Harry S. Jonas, M.D., Dean of the School of Medicine

Robert M. Kretzschmar, M.D., Chairman and Professor of Department of Obstetrics and Gynecology

Howard I. Schwartz, M.D., Assistant Professor of Department of Obstetrics and Gynecology

Naim S. Kassar, M.D., Clinical Assistant Professor of Department of Obstetrics and Gynecology

James M. Riscoe, M.D., Assistant Professor of Department of Medicine

The following faculty members of the Washington University School of Medicine, St. Louis, Missouri:

William M. Landau, M.D., Chairman and Professor of Department of Neurology

James P. Crane, M.D., Chairman of Department of Obstetrics and Gynecology at the Jewish Hospital of St. Louis

Maurice J. Keller, M.D., Clinical Professor of Department of Pediatrics, Director of Department of Pediatrics at St. Louis County Hospital

Antonio Hernandez, M.D., Professor of Department of Pediatrics

David Goldrink, M.D., Professor of Department of Pediatrics

John Strauch Meyer, M.D., Professor of Department of Pathology

Dorothy J. Jones, M.D., F.A.A.P., Associate Professor Emeritus of Department of Pediatrics

Paul Simons, M.D., Associate Professor of Department of Pediatrics

Arnold W. Strauss, M.D., Associate Professor of Department of Pediatrics

Vita J. Land, M.D., Associate Professor of Department of Pediatrics, Division of Hematology/Oncology

Clark Distelhorst, M.D., Associate Professor of Department of Pediatrics, Division of Hematology/Oncology

Michael J. Gast, M.D., Assistant Professor of Department of Obstetrics and Gynecology, President Elect of Missouri Perinatal Society, Member of Governor's Task Force on Maternal and Child Health Care

Edward Peskin, M.D., Assistant Professor of Department of Obstetrics and Gynecology

S. Michael Freiman, M.D., Clinical Assistant Professor of Department of Obstetrics and Gynecology

Melvin I. Schwartz, M.D., Clinical Assistant Professor of Department of Obstetrics and Gynecology

Stephen John Barenkamp, M.D., Assistant Professor of Department of Pediatrics

David T. Wyatt, M.D., Research Fellow of Department of Endocrinology and Metabolism

The following faculty members of the St. Louis University School of Medicine, St. Louis, Missouri:

Max Pepper, M.D., Chairman and Professor of Department of Community Medicine

Alan C. Henderson, D.P.H., Chairman of Department of Community Health

Ursula T. Rolfe, M.D., Acting Director of Ambulatory Services at Cardinal Glennon Memorial Hospital for Children, Medical Director of Pediatric Nurse Practitioner Program, Associate Professor of Pediatrics/Adolescent Medicine

James A. Monteleone, M.D. Professor of Department of Endocrinology and of Department of Pediatrics

Richard C. Barry, M.D., Director of Emergency Care Services at Cardinal Glennon Memorial Hospital for Children

Fernando S. de Castro, M.D., Clinical Professor of Pediatrics

Charles J. Sigmund, Jr., M.D., Associate Clinical Professor of Medicine

Dennis M. O'Conner, M.D., Associate Professor of Pediatrics

Sherin U. DeVaskar, M.D., Assistant Professor of Pediatrics

Mel Goldberg, M.D., Assistant Professor of Department of Pediatrics

Peter Krewet, M.D., Assistant Professor Department of Pediatrics

James R. Drake, M.D., Assistant Professor of Internal Medicine

Linda M. Kodesch, M.D., Resident Physician at Cardinal Glennon Memorial Hospital for Children

Vernon L. Johnson, M.D., Resident Physician of Department of Obstetrics and Gynecology

The following individuals from St. John's Mercy Medical Center, St. Louis, Missouri:

Frank H. Gafford IV, M.D., Chairman of Department of Critical Care Medicine, Director of Intensive Care Units

Christopher Veremakis, M.D., Vice-Chairman of Department of Critical Care Medicine, Co-Director of Intensive Care Units

The following faculty members of Wayne State University School of Medicine, Detroit, Michigan:

T.N. Evans, M.D., Chairman and Professor of Department of Obstetrics and Gynecology

Robert D. Coye, M.D., Professor of Department of Pathology

The following faculty members of the University of Illinois College of Medicine, Chicago, Illinois:

William N. Spellacy, M.D., Chairman and Professor of Department of Obstetrics and Gynecology

Morton C. Creditor, M.D., Professor of Department of Clinical Medicine

Nicholas J. Cotsonas, Jr., M.D., Professor of Department of Medicine

The following faculty members of the Albert Einstein College of Medicine, Bronx, New York:

Irwin H. Kaiser, M.D., Professor of Department of Obstetrics and Gynecology

Seymour L. Romney, M.D., Professor of Department of Obstetrics and Gynecology

The following faculty members of the University of Texas Medical Branch, Galveston, Texas:

L. Charles Powell, Jr., M.D., Professor of Department of Obstetrics and Gynecology

Harry M. Little, Jr., M.D., Professor of Department of Obstetrics and Gynecology

\* \* \* \* \* \*

Daniel K. Bloomfield, M.D., Dean of the School of Basic Medical Sciences, University of Illinois-Champaign/Urbana College of Medicine, Urbana, Illinois

Kenneth Edelin, M.D., Chairman and Professor of Department of Obstetrics and Gynecology, Boston University School of Medicine, Boston, Massachusetts

Frederick Naftolin, M.D., Ph.D., Chairman and Professor of Department of Obstetrics and Gynecology, Yale University School of Medicine, New Haven, Connecticut

Kenneth R. Niswander, M.D., Professor of Department of Obstetrics and Gynecology, University of California at Davis, Sacramento, California

Joseph Seitchik, M.D., Professor of Department of Obstetrics and Gynecology, University of Texas Health Science Center at San Antonio Medical School, San Antonio, Texas

Donald P. Swartz, M.D., Professor of Department of Obstetrics and Gynecology, Albany Medical College, Albany, New York

Schuyler G. Kohl, M.D., Professor of Department of Obstetrics and Gynecology, Downstate Medical Center, Brooklyn, New York

Fritz Fuchs, M.D., Professor of Department of Obstetrics and Gynecology, Cornell University Medical College, New York City, New York

T. Terry Hayashi, M.D., Chairman and Professor of Department of Obstetrics and Gynecology, Magee Womens Hospital, Pittsburgh, Pennsylvania

F.J. Bonte, M.D., Director of Nuclear Medicine, University of Texas Health Science Center, Dallas, Texas

Richard H. Schwarz, M.D., Chairman and Professor of Department of Obstetrics and Gynecology, State University of New York School of Medicine, Brooklyn, New York

David H. Wells, M.D., Director of Neo-Natal Intensive Care Unit at Greenville Hospital System, Greenville Hospital System, Greenville, South Carolina

J. Robert Willson, M.D., Chairman Emeritus and Professor of Department of Obstetrics and Gynecology, University of Michigan Medical Center, Ann Arbor, Michigan

Ralph C. Benson, M.D., Chairman Emeritus of Department of Obstetrics and Gynecology, Oregon Health Sciences Center, Portland, Oregon

Raymond H. Kaufman, M.D., Chairman and Professor of Department of Obstetrics and Gynecology, Baylor College of Medicine, Houston, Texas

Henry F. Foster, Jr., M.D., Chairman and Professor of Department of Obstetrics and Gynecology, Meharry Medical College, Nashville, Tennessee

Ben M. Peckham, M.D., Chairman and Professor of Department of Obstetrics and Gynecology, University of Wisconsin Medical School, Madison, Wisconsin

Charles H. Hendricks, M.D., Chairman and Professor of Department of Obstetrics and Gynecology, University of North Carolina School of Medicine, Chapel Hill, North Carolina

James H. Lee, Jr., M.D., Chairman and Professor of Department of Obstetrics and Gynecology, Jefferson Medical College, Philadelphia, Pennsylvania

Roy G. Holly, M.D., Chief of the Department of Obstetrics and Gynecology, Mount Sinai Medical Center, Milwaukee, Wisconsin

John W. Greene, Jr., M.D., Chairman and Professor of Department of Obstetrics and Gynecology, University of Kentucky School of Medicine, Lexington, Kentucky

Roy T. Parker, M.D., Chairman Emeritus and Professor of Department of Obstetrics and Gynecology, Duke University Medical Center, Durham, North Carolina