STATE ex rel. Deborah
HOWENSTINE, M.D.,
Relator,

v.

The Honorable Ellen S. ROPER,
Respondent.

No. SC 85998.

Supreme Court of Missouri,
En Banc.

Feb. 15, 2005.

Michael R. Tripp, John L. Roark, Columbia, for relator.

Michael D. Strohbehn, Kansas City, for respondent.

## ORIGINAL PROCEEDING
## IN PROHIBITION

WILLIAM RAY PRICE, JR., Judge.

In the underlying medical malpractice case, Paul Muren claims that Dr. Debra Howenstine is responsible for negligent treatment he received from various nurses at a public health center. Dr. Howenstine moved for summary judgment on the bases of official immunity and public duty immunity. The trial court overruled Dr. Howenstine's motion. This Court issued a preliminary writ, which is now made absolute.

### I. Legal Standard for Writ

■ "Prohibition is particularly appropriate when the trial court, in a case where the facts are uncontested, wrongly decides a matter of law thereby depriving a party of an absolute defense." *State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell,* 91 S.W.3d 612, 616 (Mo. banc 2002).

"Forcing upon a defendant the expense and burdens of trial when the claim is clearly barred is unjust and should be prevented." *State ex rel. O'Blennis v. Adolf,* 691 S.W.2d 498, 500 (Mo.App.1985).

### II. Background

#### A. Facts

Mr. Muren visited the City of Columbia/Boone County Health Department Clinic in April 2000. He was initially treated by four public health nurses and an advanced practice nurse. He tested positive for tuberculosis. The advanced practice nurse prescribed Isoniazid (INH) and he began the nine-month treatment. The treatment destroyed Mr. Muren's liver and he received a transplant in October 2000.

Dr. Howenstine was consulted and began treatment of Mr. Muren on September 19, 2000. There are no allegations that Dr. Howenstine negligently treated Mr. Muren herself, but instead Mr. Muren claims that she was responsible for the actions of the nurses at the clinic. In addition to her role as a consulting and treating physician at the clinic, Dr. Howenstine was the medical director for clinic. As medical director, she assisted in adopting protocols and participated in training, consulting and supervision at the clinic.

Mr. Muren brought suit against the nurses and Dr. Howenstine. He settled his claims against the nurses. Dr. Howenstine's liability is the only remaining issue. There is no genuine issue of material fact. There is no dispute that the clinic nurses provided negligent treatment to Mr. Muren. The dispute is legal. Within the context of the delivery of population-based health services, is Dr. Howenstine immune from the suit?

## B. Statutory and Regulatory Scheme

The Department of Health for the State of Missouri has the charge to "safeguard the health of the people in the state and all its subdivisions." Sec. 192.020, RSMo. 2000.[1] Part of this charge is carried out by local public health centers, which are intended to improve the health of all inhabitants of the county. Sec. 205.050;[2] 19 C.S.R. 10–1.010(1), (4).[3] These local centers are organized by collaborative practice arrangements, which "delegate to . . . registered professional nurse[s] the authority to administer or dispense drugs and provide treatment . . . [and to] prescribe drugs if the registered nurse is an advanced practice nurse." Secs. 334.104(1), (2).[4]

The state boards of nursing and of the healing arts promulgate the rules regarding collaborative practice arrangements. Sec. 334.104(3).[5] The relevant rules are contained in 4 C.S.R. 200–4.200(1), (5).[6]

1. All further statutory references are to RSMo 2000 unless otherwise indicated. Section 192.020.1 states: "It shall be the general duty and responsibility of the department of health and senior services to safeguard the health of the people in the state and all its subdivisions."

2. "The public health center is established, maintained and operated for the improvement of health of all inhabitants of said county or counties." Sec. 205.050.

3. The regulation provides, in pertinent part:

(1) The Department of Health was created and established . . . under the authority of Article IV, Section 12, of the Constitution. The department is charged with the responsibility for supervising and managing public health functions and programs. . . .

. . . .

(4) The Division of Local Health and Institutional Services is responsible for the supervision of the department's district offices which provide direct public health services. . . . The division's central and district offices provide nursing and other professional program consultation and assistance to city and county public health units which deliver the department's health services to the public through contractual agreements.

4. Sections 334.104.1 and .2 provide in relevant part:

1. A physician may enter into collaborative practice arrangements with registered professional nurses. Collaborative practice arrangements shall be in the form of written agreements, jointly agreed-upon protocols, or standing orders for the delivery of health care services. Collaborative practice arrangements, which shall be in writing, may delegate to a registered professional nurse the authority to administer or dispense drugs and provide treatment as long as the delivery of such health care services is within the scope of practice of the registered professional nurse and is consistent with that nurse's skill, training and competence.

2. Collaborative practice arrangements, which shall be in writing, may delegate to a registered professional nurse the authority to administer, dispense or prescribe drugs and provide treatment if the registered professional nurse is an advanced practice nurse as defined in subdivision (2) of section 335.016, RSMo. Such collaborative practice arrangements shall be in the form of written agreements, jointly agreed-upon protocols or standing orders for the delivery of health care services.

5. "The state board of registration for the healing arts pursuant to section 334.125 and the board of nursing pursuant to section 335.036, RSMo, may jointly promulgate rules regulating the use of collaborative practice arrangements." Sec. 334.104(3).

6. The regulation states:

(1) For the purpose of these rules, the following definitions shall apply:

(A) Advanced practice nurse-A registered professional nurse who is also an advanced practice nurse as defined in section 335.016(2), RSMo;

(B) Collaborative practice arrangements-Refers to written agreements, jointly agreed upon protocols, or standing orders, all of which shall be in writing, for the delivery of health care services; and

(C) Registered professional nurse-A registered professional nurse as defined in sec-

Subdivision (5) of the regulation states: "(A) In ... public health clinics that provide population-based health services limited to ... tuberculosis control ..., the geographic areas, methods of treatment and review of services shall occur as set forth in the collaborative practice arrangement." *Id.* at (5)(A). This is in contrast to "services ... includ[ing] diagnosis and initiation of treatment of disease or injury not related to population-based health services" when "the provisions of sections (2), (3), and (4) above shall apply." *Id.* at (5)(A).

A collaborative practice arrangement is simply the operating agreement between physicians and nurses to provide treatment. *Id.* at (1)(B). There are several collaborative arrangements for various purposes at the Boone County clinic, but the one that specifically pertains to the delivery of population-based services is contained in the Columbia/Boone County Health Department Policies and Protocols Manual. It provides, "The Medical Director of Columbia/Boone County Health Department delegates ... to registered nurses ... the authority to deliver population based health care services, including ... tuberculosis control. Written protocols related to these services are reviewed and signed annually by the Medical Director and nursing staff."[7] Collaborative Practice Arrangement, Policies and Protocols 2001, Columbia/Boone County Health Department Manual 3.

## III. Immunity

As medical director for the clinic, Dr. Howenstine relies upon two related, but different immunities—official immunity

tion 335.016(9), RSMo, who is not an advanced practice nurse.

(2) Geographic Areas.

. . . .

(3) Methods of Treatment.

(A) The methods of treatment and the authority to administer, dispense, or prescribe drugs delegated in a collaborative practice arrangement between a collaborating physician and collaborating registered professional nurse or advanced practice nurse shall be within the scope of practice of each professional and shall be consistent with each professional's skill, training, education, and competence.

(B) The collaborating physician shall consider the level of skill, education, training, and competence of the collaborating registered nurse or advanced practice nurse and ensure that the delegated responsibilities contained in the collaborative practice arrangement are consistent with that level of skill, education, training, and competence.

. . . .

(I) Methods of Treatment delegated and authority to administer, dispense, or prescribe drugs shall be subject to the following:

1. The physician retains the responsibility for ensuring the appropriate administering, dispensing, prescribing and control of drugs utilized pursuant to a collaborative practice arrangement. . . .

(4) Review of Services.

. . . .

(5) Population–Based Public Health Services.

(A) In the case of the collaborating physicians and collaborating registered professional nurses or advanced practice nurses practicing in association with public health clinics that provide population-based health services limited to ... tuberculosis control ... the geographic areas, methods of treatment and review of services shall occur as set forth in the collaborative practice arrangement. *If the services provided in such settings include diagnosis and initiation of treatment of disease or injury not related to population-based health services, then the provisions of sections (2), (3), and (4) above shall apply.* (emphasis added).

7. The local health department is headed by the director of public health, who works for the city manager and is appointed by the county commission. Sec. 205.100. The medical director for the health center, the position in question, works under the public health director, but her professional judgment is not supervised by the health director.

and public duty immunity. Both of these immunities have been discussed thoroughly by this Court.

"[O]fficial immunity shields officials from liability for injuries arising out of their discretionary acts or omissions. An official may be held liable for injuries arising out of ministerial acts." *Charron v. Thompson*, 939 S.W.2d 885, 886 (Mo. banc 1996). Public duty immunity "holds that a public employee may not be held civilly liable for breach of a duty owed to the general public, as distinguished from a duty owed to particular individuals." *Green v. Denison*, 738 S.W.2d 861, 866 (Mo. banc 1987). This immunity does not require that the individual be a public official. *Brown v. Tate*, 888 S.W.2d 413, 416 (Mo.App.1994).

## IV. Official Immunity Analysis

Dr. Howenstine meets the test for official immunity. She is an official and was acting in her discretionary capacity.

### A. Public Officer

A public office is the right, authority and duty, created and conferred by law, by which ... an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer.

*State ex rel. Pickett v. Truman*, 333 Mo. 1018, 64 S.W.2d 105, 106 (1933). "Whether or not a public employee is a public officer is dependent upon the legal and factual circumstances involved." *State ex rel. Eli Lilly & Co. v. Gaertner*, 619 S.W.2d 761, 764 (Mo.App.1981). This immunity protects "those individuals who, in the face of imperfect information and limited resources, must daily exercise their best judgment in conducting the public's business." *Kanagawa v. State*, 685 S.W.2d 831, 836 (Mo. banc 1985).

Dr. Howenstine's position as medical director existed to discharge the city, county and state obligations to improve the health of the public. The health department was delegated this authority by law. Sec. 205.050; 19 C.S.R. 10–1.010(4).[8] Her particular office was created by agreement between the City of Columbia and the University of Missouri, in part, to maintain collaborative practice arrangements, adopt protocols and standing orders for the nurses to follow and provide consultation to nurses and patients at the clinic. The fact that Dr. Howenstine is an employee of the University of Missouri and that she serves as the medical director of the health department pursuant to an agreement between the City of Columbia and the university is not consequential to the determination. Dr. Howenstine was a public official for purposes of this lawsuit.

### B. Discretionary Function

"Whether a function is discretionary or ministerial is a case by case determination to be made after weighing such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment." *Charron v. Thompson*, 939 S.W.2d 885, 886 (Mo. banc 1996).

The duties exercised by Dr. Howenstine as medical director of the health department are primarily discretionary. Mr. Muren, however, raises a number of arguments why Dr. Howenstine should not be allowed immunity on this basis. This opinion will address Mr. Muren's arguments in relation to the claims he raised in his petition.

---

**8.** The text of this regulation is set out in notes 2 and 3.

## 1.

The first group of Mr. Muren's claims involves a determination of whether Dr. Howenstine, as a treating physician, can be vicariously liable for the nurses' actions. Mr. Muren first alleges that Dr. Howenstine "failed to properly train and supervise the nurses and nurse practitioners at the Health Department clinic to follow the established policies, procedures and protocols in providing health care to [him], including prescribing and dispensing the medication INH to [him] and monitoring his reaction to the medication[.]" He also claims that she "failed to conduct adequate history and physical examination on [him]; and failed to provided necessary medical direction, services, consultation and supervision of the nurses who provided services to [him.]" Further, Mr. Muren claims that Dr. Howenstine "failed to provide adequate patient education to [him] regarding risks, benefits, contraindications, adverse effects of the mediation INH ... and the need for monitoring."

Essentially, Mr. Muren argues that Dr. Howenstine's acts were not discretionary because they arose from her acts as a treating physician. In *Eli Lilly v. Gaertner*, a group of doctors working at a state institution was sued in malpractice for prescribing a drug that harmed the defendant. 619 S.W.2d 761, 762–64 (Mo.App.1981).

The court held that the "doctors [were] being sued as treating physicians, not as titular heads of any department ... not ... for an erroneous decision requiring the exercise of governmental judgment and discretion but for an allegedly erroneous medical decision...." *Id.* at 765. Because Dr. Howenstine is not being sued for any neglect on her part in personally providing treatment, this exception does not strictly apply.

Mr. Muren, however, continues the argument by asserting that the nurses who actually provided the negligent care and failed to warn could only operate under the umbrella of Dr. Howenstine's medical license. As such, they should be treated as an extension of Dr. Howenstine for which she can be held vicariously liable.

The Nursing Practice Act of 1975 expanded the scope of nursing in Missouri. Sec. 335.016(10); *Sermchief v. Gonzales*, 660 S.W.2d 683, 689 (Mo. banc 1983). In *Sermchief*, this Court extensively discussed the 1975 changes in the nursing statute.[9] *Id.* It focused on the elimination of the requirement that a physician directly oversee nursing functions. *Id.* The nurses in that clinic took histories, made breast and pelvic examinations, dispensed designated medications and diagnosed the existence or nonexistence of contraindications to the use of contraceptives pursuant

---

**9.** This section has remained identical in language, but has been numbered differently since the Court discussed it in *Sermchief.* It states:

(10) "Professional nursing", the performance for compensation of any act which requires substantial specialized education, judgment and skill based on knowledge and application of principles derived from the biological, physical, social and nursing sciences, including, but not limited to:

(a) Responsibility for the teaching of health care and the prevention of illness to the patient and his or her family;

(b) Assessment, nursing diagnosis, nursing care, and counsel of persons who are ill, injured or experiencing alterations in normal health processes;

(c) The administration of medications and treatments as prescribed by a person licensed by a state regulatory board to prescribe medications and treatments;

(d) The coordination and assistance in the delivery of a plan of health care with all members of a health team;

(e) The teaching and supervision of other persons in the performance of any of the foregoing;

Sec. 335.016(10).

to written physician protocols and orders. *Id.* at 684–86. In *Sermchief,* this Court held: "There can be no question that a nurse undertakes only a nursing diagnosis, as opposed to a medical diagnosis, when she or he finds or fails to find symptoms described by physicians in standing orders and protocols for the purpose of administering courses of treatment prescribed by the physician in such orders and protocols." *Id.* at 689–90. That is exactly how the clinic provides tuberculosis treatment at the clinic in this case.

The population-based services here were provided by nurses pursuant to written protocols and collaborative practice arrangements authorized by the state. Sec. 205.050; *Sermchief,* 660 S.W.2d at 689; 19 C.S.R. 10–1.010(4). The treatment provided by the nurses to Mr. Muren was under independent statutory authority, not under Dr. Howenstine's medical license. Sec. 205.050; *Sermchief,* 660 S.W.2d at 689; 19 C.S.R. 10–1.010(4). The exception discussed in *Eli Lilly* does not apply. 619 S.W.2d at 765.

**2.**

The next group of claims assert that Dr. Howenstine had a duty to ensure the competency of the nurses at the clinic. Mr. Muren claims that Dr. Howenstine "failed to ensure that the delegated responsibilities set forth in a collaborative practice arrangement with [the] nurse practitioners ... were consistent with the level of skill, education, training and competence of [the] nurse practitioners and nurses[.]" Mr. Muren also asserts that Dr. Howenstine "failed to ensure that nurses and nurse practitioners followed guidelines for consulting her or another physician and referring plaintiff Paul Mu-

ren to her or another physician for personal medical evaluation[.]" He essentially claims that Dr. Howenstine had an additional duty to ensure the competence of the nurses at the clinic. He cites 4 C.S.R. 200–4.200(3)(A), (B), and (I) as the source of this duty.[10]

4 C.S.R. 200–4.200 has five subsections and sets out many of the general rules governing collaborative practice arrangements in Missouri. Section 1 sets out definitions, section 2 provides geographic rules, section 3 gives rules for treatment methods, section 4 gives physician oversight rules and section 5 is entitled "Population–Based Public Health Services." Section 5 specifically exempts tuberculosis treatment as a population-based service from all of the rules provided in sections 2, 3, and 4.[11]

Dr. Howenstine had no duty to ensure the competency of the nurses in this clinic based on this regulation as those sections, and specifically section 3, do not apply to population-based services. To the extent that Dr. Howenstine had a duty beyond the regulation, it would have been discretionary in nature and subject to immunity.

**3.**

The final group of claims deals with Dr. Howenstine's oversight of the population-based services provided at the clinic. Mr. Muren alleges that Dr. Howenstine "failed to properly and regularly review the work, records and practice of patient assessment, health care, treatment and medications delivered to [him] by nurses and the nurse practitioner pursuant to a collaborative practice agreement[.]" He also asserts that Dr. Howenstine "failed to be present and to participate in a review of [his] medical condition and the health care pro-

---

**10.** As set out in Section II of this opinion and note 6.

**11.** *See* note 6.

vided to him at the Health Department clinic[.]"

The oversight requirements of population-based services like tuberculosis are detailed in 4 C.S.R. 200–4.200(5). It states: "[In] public health clinics that provide population-based health services limited to ... tuberculosis control ... the geographic areas, methods of treatment and review of services shall occur as set forth in the collaborative practice arrangement." *Id.* at (5)(A). Dr. Howenstine maintains many collaborative practice arrangements at the clinic. Although she maintains collaborative practice arrangements regarding primary care, which may contain duties particular to that practice, the arrangement governing population-based services is very specific to tuberculosis treatment and is silent concerning oversight of those services.[12] Collaborative Practice Arrangement, Policies and Protocols 2001, Columbia/Boone County Health Department Manual 3. The arrangement leaves supervision of the tuberculosis services subject to Dr. Howenstine's discretion. There was no specific duty created in the population-based services collaborative arrangement for Dr. Howenstine to oversee the population-based services provided at the clinic.

Dr. Howenstine is immune as an official from all of the claims discussed previously. Her involvement at the clinic was to exercise her discretion in acting on behalf of the government in best discharging its duty to deliver population-based services according to her professional judgment.

## V. Public Duty Immunity Analysis

Dr. Howenstine has also met the requirements for public duty immunity. The test is simply a determination of whether the person owed a duty to the public or to a specific individual. *Green v. Denison,* 738 S.W.2d 861, 866 (Mo. banc 1987). The public duty doctrine shields employees from liability, but it also "shields public officers, and the governmental bodies that employ them, from liability." *Heins Implement Co. v. Mo. Highway & Transp. Comm'n,* 859 S.W.2d 681, 694 (Mo. banc 1993).

The purpose of the health center is to minimize the effects and introduction of tuberculosis and other similar diseases into the community. Secs. 192.020, 205.050; *see* sec. 205.060. The clinic contractually assumed the state's obligation to provide tuberculosis treatment. 19 C.S.R. 10–1.010(4). As medical director, Dr. Howenstine implemented collaborative practice arrangements for delivery of tuberculosis and other population-based services. Her directorship duties are not particularized to any patient, but instead to the public. Prior to September 19, 2000, she owed no particularized duty to Mr. Muren. Her acts to improve the operations, treatment and training at the clinic were for the public at large and not specifically for Mr. Muren.

Dr. Howenstine did provide treatment to Mr. Muren on and after September 19, 2000. This treatment would not be subject to public duty immunity because it was particularized to Mr. Muren. However, no allegations of negligence were made re-

---

**12. Collaborative Practice Arrangement**
The Medical Director of Columbia/Boone County Health Department delegates to Registered Professional Nurses employed by the Columbia/Boone County Health Department the authority to deliver population based health care services, including ... tuberculosis control.... Written protocols related to these services are reviewed and signed annually by the Medical Director and nursing staff.
Collaborative Practice Arrangement, Policies and Protocols 2001, Columbia/Boone County Health Department Manual 3.

garding this treatment. Dr. Howenstine is immune from suit because her duties as medical director ran only to the public.

## VI. Conclusion

Dr. Howenstine is immune from this suit as a matter of law by both official immunity and public duty immunity. The writ of prohibition is made absolute.

All concur.