OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 The Cigarette Marketing Standards Act (CMSA; Tax Law §§ 483-489) prohibits the sale of cigarettes below cost when the seller intends thereby to harm competition or evade taxes. On March 3, 2000, the Department of Taxation and Finance released a Technical Services Bureau (TSB) Memorandum informing the industry that it believes certain manufacturer promotions violate the CMSA. Plaintiffs — a cigarette manufacturer and a retailer — have sought a judgment declaring the Tax Department’s position unreasonable and enjoining the Department from taking enforcement measures based on the TSB Memorandum. While we reject the Department’s argument that its Memorandum interpreting the statute is entitled to deference, we conclude — as did the Appellate Division — that the interpretation is correct.
 

 Some initial review of the statutory scheme is necessary to frame the facts of this case. The Legislature enacted the CMSA in response to a perceived need to regulate and stabilize the wholesale and retail sales price of cigarettes within the state, in view of “predatory pricing by cigarette dealers” from neighboring states that already had minimum price statutes (L 1985, ch 897, § 1). In furtherance of this purpose, the CMSA prohibits
 
 *320
 
 “Cost” consists of the “basic cost of cigarettes” plus the agent
 
 [1]
 
 or dealer’s “cost of doing business”
 
 (see
 
 Tax Law § 483 [b]). The “basic cost of cigarettes” is “the invoice cost of cigarettes to the agent who purchases from the manufacturer * * * less all trade discounts, except discounts for cash, to which shall be added the full face value of any stamps which may be required by law” (Tax Law § 483 [a] [1]). The manufacturer promotions disputed here are not “trade discounts” and have no impact on the “cost of doing business” or the value of tax stamps.
 
 [2]
 
 The issue is whether retail sales made pursuant to these promotions constitute sales below the “basic cost of cigarettes” and, if so, whether the Tax Department is right to presume that such sales are made with an unlawful intent under section 484 (a) (1).
 

 
 *319
 
 “any agent, wholesale dealer or retail dealer, with intent to injure competitors or destroy or substantially lessen competition, or with intent to avoid the collection or paying over of such taxes as may be required by law, to advertise, offer to sell, or sell cigarettes at less than cost of such agent wholesale dealer or retail dealer, as the case may be” (Tax Law § 484 [a] [1]).
 

 
 *320
 
 Cigarette manufacturers use several kinds of promotions to attract buyers. First, they distribute paper coupons, for instance in newspapers. Consumers who present the coupons to retailers pay a reduced price, and the retailers then recover the difference from the manufacturer. Second, in “affixed coupon” or “affixed sticker” promotions, a manufacturer representative attaches coupons or stickers to the cigarette packages in a store, and they are redeemed in the same way as paper coupons distributed directly to the consumer. Finally, in “paperless coupon” or “buy-down” promotions, a manufacturer designates a certain amount of money it will contribute to each consumer’s purchase, either during a specific period or until a set quantity of cigarettes is sold. The retailer accordingly charges lower prices, and is reimbursed by the manufacturer. In a slight variant, the “master-type” promotion, the retailer may receive the necessary sum from the agent or wholesale dealer, who, in turn, is reimbursed by the manufacturer. Lorillard uses all of these promotions, and its coplaintiff ATN would like to continue to participate in them.
 

 In the disputed TSB Memorandum, the Department asserts that cigarettes are being sold in conjunction with master-type and buy-down promotions and that such promotions violate the
 
 *321
 
 CMSA. The Memorandum then reviews some of the enforcement options available under that statute, noting that the Department may fine or suspend the licenses of agents or wholesale dealers (see Tax Law § 484 [a] [5]), and that wholesale and retail dealers are subject to criminal prosecution for violating the CMSA (see Tax Law § 1829). In addition to circulating the TSB Memorandum, Department personnel met with representatives of various manufacturers, agents and dealers, including Lorillard and ATN. In these meetings, the Department allegedly threatened retailers — as well as other industry members — with fines and license suspensions if they continued to participate in master-type and buy-down promotions.
 

 After some retailers refused to participate in the disputed promotions, Lorillard and ATN brought this action, seeking declaratory and injunctive relief. In orally denying the Tax Department’s motion to dismiss, Supreme Court rejected its argument that the action is unripe.
 
 [3]
 
 By the time the parties made their motions for summary judgment, the Department had clarified its view that the legality of a promotion depends on whether it is available to all retailers in the state, and its consequent position that, like master-type and buy-down promotions, some affixed sticker or affixed coupon promotions— those that are not universally available — are unlawful. Plaintiffs, in turn, maintained that the promotions comply with the CMSA because they ensure that retail dealers collect the full cost of every package of cigarettes — and that the State ultimately receives every penny of tax it is due.
 

 Supreme Court granted the Department’s motion for summary judgment, holding that while “Lorillard fully funds the promotional programs at issue and the retail dealer receives the full purchase price, it is clear that participating dealers are ‘directly or indirectly’ giving price concessions to cigarette
 
 *322
 
 purchasers.” Further, reasoning that because the Department is charged with enforcing the CMSA, its interpretation of that statute is entitled to deference unless it is “irrational,” Supreme Court concluded that the Department’s interpretation is “not irrational.” The Appellate Division affirmed and we granted leave to appeal.
 

 I.
 

 At the threshold, we must determine the standard of review governing the Department’s construction of the CMSA. As we have often stated, “an agency’s interpretation of the statutes it administers must be upheld absent demonstrated irrationality or unreasonableness,” but where “the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency”
 
 (Seittelman v Sabol,
 
 91 NY2d 618, 625 [1998] [internal citations omitted];
 
 see also Kurcsics v Merchants Mut. Ins. Co.,
 
 49 NY2d 451, 459 [1980]). Unquestionably the CMSA contemplates an enforcement role for the Department, but the parties dispute whether the Department’s presumed expertise in the operation of cigarette markets lends authority to its construction of Tax Law § 484. We conclude that this is a matter of statutory interpretation, not agency deference.
 

 This action differs significantly from most of the administrative law and tax cases the parties cite. This action is not a challenge to an agency rule or adjudication; nor do plaintiffs have any preserved argument that the TSB Memorandum constitutes agency action improperly taken without rulemaking
 
 (see
 
 Tax Law § 171 [Twenty-third]; 20 NYCRR 2375.6 [a] [2]). Rather, the Department in all procedural respects properly issued the TSB Memorandum, a document “advisory in nature * * * merely explanatory” and without “legal force” (20 NYCRR 2375.6 [c]). To this extent, plaintiffs derive little benefit from authorities they cite, for instance, for the proposition that agencies deserve less deference when they issue regulations inconsistent with positions they have previously formally taken
 
 (cf. Matter of Richardson v Commissioner of N.Y. City Dept. of Social Servs.,
 
 88 NY2d 35, 39 [1996]).
 

 Conversely, however, the Tax Department cannot squeeze as much as it would like out of cases in which, while reviewing challenges to audits and assessments, we have deferred to its construction of tax statutes
 
 (cf. Matter of Siemens Corp. v Tax Appeals Trib.,
 
 89 NY2d 1020 [1997];
 
 Matter of American Tel. &
 
 
 *323
 

 Tel. Co. v State Tax Commn.,
 
 61 NY2d 393 [1984]). In such cases the Department necessarily must apply expertise to the detailed labor of fitting tax filings and other accounting artifacts into the language of the Tax Law. Here, by contrast, we are not reviewing the “specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially”
 
 (Matter of American Tel. & Tel.,
 
 61 NY2d at 400). Moreover, the Department concedes that the promotions pose no threat to its collection of revenue.
 
 [4]
 
 We are reluctant to assume that the Legislature intended to afford the Department the same deference when it expounds this pricing statute that it may enjoy when it more concretely applies statutory terms to specific transactions, especially in the revenue context.
 

 Further, because the TSB Memorandum and subsequent communications by individual Tax Department personnel serve an advisory purpose, they lack the precision of determinations generated through more formal Department action. According to plaintiffs, Department personnel threatened retailers with $20,000 fines for CMSA violations. But the CMSA provides such fines only for wholesalers and agents (see Tax Law § 484 [a] [5] [A]). The TSB Memorandum is more accurate; the only penalty it mentions for retail dealers is that which would ensue upon a successful criminal prosecution. But if a CMSA violation were prosecuted, the applicable rules of construction would be those applying to penal statutes.
 

 In this context, it is noteworthy that the TSB Memorandum omits reference to the one civil remedy the Tax Department is expressly entitled to seek against a retailer who violates the CMSA: an injunction
 
 (see
 
 Tax Law § 484 [b] [1]). Nothing about the CMSA suggests a legislative intention to make the pursuit of this remedy easier for the Department than for aggrieved competitors, who also may seek it. The CMSA thus puts the Tax Department, in some respects, on a similar footing with private litigants. This circumstance further differentiates this case from revenue-related tax cases where we have taken a more deferential approach.
 

 Finally, as the Department recognizes, our affirmance here may function as an endorsement of the Department’s interpre
 
 *324
 
 tation of the CMSA, but it could never resolve whether a given sale made pursuant to a master-type or buy-down promotion actually violates that statute. This is because the CMSA only establishes a presumption that sales below cost are made with the proscribed intent
 
 (see
 
 Tax Law § 484 [a] [6]). The TSB Memorandum merely states this presumption and asserts that the disputed promotions result in sales below cost, necessarily leaving the application to concrete cases for the appropriate enforcing authorities and the courts. We are therefore loath to resolve the instant case on an unnecessarily expansive reading of the Tax Department’s authority. As the next section shows, the Tax Department prevails in any event, on our own reading of the plain meaning of the statutory language.
 

 II.
 

 Neither the prohibition on sales below cost nor the definition of the “basic cost of cigarettes” says anything directly about manufacturer promotions, so the parties dispute how such promotions fit into the statutory scheme. The Tax Department reasons that such promotions result in sales to consumers “at less than cost of such * * * retail dealer” and notes that such sales are “prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition”
 
 (see
 
 Tax Law § 484 [a] [1], [6]). The harm to competition would arise when one retailer, participating in a promotion unavailable to its rival, sold cigarettes at a price its competitor could not afford to match.
 

 The Department maintains that buy-down and master-type promotions are inherently likely to harm competition in this way because they require a deal between the manufacturer and the retailer, a deal which may be unavailable to some retailers or may be made available with conditions that vary from one retailer to the next. In contrast, consumers receiving paper coupons through the mail or the press may redeem them with any retailer, and the Department considers this possibility sufficient to rebut the presumption of anticompetitive intent set forth in section 484 (a) (6). Finally, the Department reasons that affixed sticker and affixed coupon promotions may also rebut the presumption, if they are made available to all retailers.
 

 Thus, starting from tlie premise that retail pricing below cost harms those retail competitors who cannot participate in a given promotion, the Tax Department has inferred what the parties call a “universality” requirement pervading the
 
 *325
 
 structure of section 484, a requirement with which the disputed promotions are incompatible. The Department finds additional support in the prohibition on attempts to calculate the cost of cigarettes by including “payment made to [a] * * * retail dealer * * * by the manufacturer” for “promotion purposes”
 
 (see
 
 Tax Law § 485 [a] [2]). Finally, it has suggested that sales made pursuant to the disputed promotions violate the prohibition on rebates and concessions
 
 (see
 
 Tax Law § 484 [a] [4] [B]; 20 NYCRR 84.1). Although it persuaded Supreme Court that the promotions are “concessions,” the Department has been far from unequivocal in its reliance, before us, on this subdivision, as it believes the determination of whether a retailer has improperly “procured” a rebate or concession “on behalf of a purchaser”
 
 (see
 
 20 NYCRR 84.1 [a] [2]) depends on the facts of a specific sale.
 

 Plaintiffs counter that the CMSA says nothing about “universality,” in contrast to other pricing statutes that make such a requirement explicit
 
 (cf.
 
 Alcoholic Beverage Control Law § 101-b). They argue that if the inference of a universality requirement rests upon a purported legislative intention to deter unfair price cuts among retailers, the legislative history— largely preoccupied with competition among wholesalers affected by differences in the regulatory schemes of neighboring states — does little to evince such an intention. This circumstance, plaintiffs maintain, is unsurprising because the Robinson-Patman Act already prohibits anticompetitive price differences, rendering additional state regulation in this area superfluous at best
 
 (see
 
 15 USC § 13 [a]
 
 et seq.).
 

 [5]
 

 To the extent that the CMSA protects retailers, they say, the promotions are compatible with this protection because in the end each participating retailer receives the full value of every pack of cigarettes sold — most of it from the consumer, and the rest from the manufacturer. Viewing the statute in this way, plaintiffs have no difficulty explaining that the promotions are not unlawful “rebates or concessions” because they do not give the retailer “something of value”
 
 (see
 
 20 NYCRR 84.1 [b] [1]), but merely leave it with the same sum per package that it would have had in any event.
 

 The dispute thus comes down to whether the promotions may be presumed to create a kind of price differentiation
 
 *326
 
 among retailers that the Legislature meant to prohibit. We agree with the Department, and the courts below, that they may.
 

 Although wholesale distributors were the industry segment most exposed to potentially unfair interstate competition, the legislative history shows that advocates saw the need to enable “all elements of the cigarette distribution industry to make reasonable profits from their labors and to ensure that no segment of the industry is injured in order to benefit other dealers” (Letter from State Dept of Taxation & Fin, July 12, 1985, Bill Jacket, L 1985, ch 897, at 19). In identifying this need, the Tax Department noted the argument that when “one retailer lowers its price to reflect lower cost of cigarettes, its retail competitors * * * pressure their suppliers for a reduced price in order to enable them to compete” (State Dept of Taxation & Fin, Report of Cigarette Predatory Pricing Task Force, at 15 [Apr. 1985]). The statute was therefore designed to regulate price competition at the retail as well as wholesale level, and its 1987 amendments, by fine-tuning several definitions, specifically “reduce [d] the advantage which chain stores” — chains of 15 or more retail outlets — had “over small independent retailers” (Governor’s Mem approving L 1987, ch 860, 1987 McKinney’s Session Laws of NY, at 2743). In sum, the legislative history reveals a greater unease over intrastate retail price differences than plaintiffs acknowledge.
 

 The simplest reading of the statute is that it is designed to limit these differences, at the retail level as well as at other levels. While the CMS A does not explicitly require manufacturers to make promotions universally available to retailers, it also leaves little room for prices reduced pursuant to promotions like those at issue here. Although the CMS A does not regulate manufacturers, it does provide that payment made by a manufacturer to a retailer for “promotion purposes, or otherwise, shall not be considered in determining the cost of cigarettes” (Tax Law § 485 [a] [2]). This provision shows, at the very least, that the Legislature was aware of manufacturer promotions and did not intend to let them distort the retail price structure. This is consistent with the main prohibition at issue here, which forbids a retailer, with unlawful intent, to sell cigarettes at less than its cost
 
 (see
 
 Tax Law § 484 [a] [l]).
 
 [6]
 
 Nothing suggests that such a sale is permissible if the retailer
 
 *327
 
 ultimately recovers the difference between the sale price and its cost. Such a reimbursement would be cold comfort to a competing retailer excluded from the promotion and, at bottom, we find more persuasive the Tax Department’s view that the CMSA aims, in part, to protect that competing retailer.
 

 Having identified this aim, we agree with the Department that some promotions — notably those with paper coupons distributed to the public at large — are presumptively lawful. This is so not because the manufacturer repays the retailer and thus brings the price back within permissible bounds, as plaintiffs would have it, but because the circumstances surrounding such promotions rebut the presumption that participants intend to harm competition or their competitors or to evade taxes. Plaintiffs are free to attempt to rebut this presumption factually in any enforcement action that follows if they continue to use buy-down and master-type promotions or sticker promotions not universally available.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Smith, Ciparick, Wesley, Rosenblatt, Grafpeo and Read concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . An agent is a person authorized to affix tax stamps to packages of cigarettes (see Tax Law § 470 [11]), and might also be a retail or wholesale dealer. No agent or wholesale dealer is a party to this action.
 

 [2]
 

 .
 
 The “cost of doing business” consists of overhead and operational expenses theoretically unique to a given agent or dealer, but in practice determined using statutory default rates. It plays no further role in the dispute under review.
 

 [3]
 

 . [1] The Department also argued that Lorillard lacks standing and that it was obligated to exhaust its administrative remedies before suing and to bring a CPLR article 78 proceeding rather than this action. The Department has abandoned most of these arguments, but renewed its claim that the action is unripe because the Department has commenced no enforcement action. For this point the Department’s reliance on
 
 Church of St. Paul & St. Andrew v Barwick
 
 (67 NY2d 510 [1986]) is misplaced. Here, the Department has allegedly used threats to force retailers to stop participating in Lorillard’s promotions, and this constitutes sufficiently “direct and immediate” harm for jurisdictional purposes
 
 (see id.
 
 at 520). We note also that, although plaintiffs pleaded that the Department is violating their Fourteenth Amendment rights, in this Court they press only their statutory arguments.
 

 [4]
 

 . Nor is this case like
 
 Matter of Fineway Supermarkets v State Liq. Auth.
 
 (48 NY2d 464 [1979]), where we deferred to an agency decision to put some grocers on a retail license delinquent list because they failed to pay their suppliers. There, the agency’s knowledge of trade practices enabled it to determine, better than a court, what constituted a “payment.”
 

 [5]
 

 . Plaintiffs make no preemption argument, however, and identify no other reason why the Legislature could not design a pricing statute that partially overlaps federal legislation.
 

 [6]
 

 . Because the Department now concedes that it cannot determine in the abstract whether the promotions involve prohibited rebates or concessions
 
 *327
 
 we, too, do not rely on this prohibition (see Tax Law § 484 [a] [4] [B]). We note only that the Department was considerably less cautious in its use of the word “rebate” in the TSB Memorandum and earlier in this litigation— yet another reason why we prefer our own reading of the CMSA to the more deferential review the Department seeks.