In the Matter of NORFOLK SOUTHERN RAILWAY COMPANY, Appellant, v IFIGENIA T. BROWN et al., Constituting the New York State Board of Real Property Services, Respondents. [798 NYS2d 783]—

Carpinello, J. Appeal from a judgment of the Supreme Court (Malone, Jr., J.), entered March 8, 2004 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondents which established final railroad ceiling valuations for certain of petitioner's 2003 real property tax assessments.

Prior to 2002, the RPTL had a mechanism for establishing ceilings on railroad real property tax assessments. The ceilings were based, in part, on the profitability of individual railroads. In order to encourage railroad companies to make additional capital improvements to their rail lines in this state, the Legislature passed, and the Governor approved, the New York State Rail Infrastructure Investment Act of 2002 (see L 2002, ch 698 [hereinafter the Act]). The Act added certain provisions to the RPTL to implement reductions in the maximum assessments of railroad properties. The reductions in assessments were to be phased in over a period of years with one quarter of the intended reductions to be realized in years 2003 and 2004 (see RPTL 489-w [1]). The Act also provided for state aid to localities to ameliorate the anticipated loss of revenue from reduced real property taxes on rail facilities.

For most of petitioner's properties in this state, the legislation had the desired effect of immediately reducing its real property tax assessments. However, because of the precise statutory mechanism for calculating the phase-in of the reductions, petitioner's maximum permissible assessments for 2003 actually increased in one city and 13 towns, prompting this proceeding challenging these particular assessments. This anomalous result occurred because of the interplay between the old system

of calculating ceilings and the phase-in provisions for the new reductions. Specifically, the phased-in reductions were based upon a comparison between the assessment under the Act (without the phase-in) and the actual assessment for the year *2000* (as opposed to the immediate preceding tax year, i.e., 2002). In these few municipalities, the assessments for 2002 were significantly lower than the assessments for 2000. Thus, by limiting the Act's reductions to one quarter of the difference between the 2003 assessment (without the phase-in limitation) and the 2000 assessment, the subject assessments actually increased in 2003.*

On this appeal from Supreme Court's dismissal of its petition, petitioner concedes that the "clear and express language of [RPTL] 489-w" refers to the year 2000 for the purpose of calculating the phase-in. For the subject municipalities, however, it claims that "the year of comparison *has* to be 2002" in order to achieve the overall intent of the Act, namely, to achieve reduced real property tax assessments for railroads. Reading the statute as written compels us to disagree with petitioner's argument and thus affirm Supreme Court's dismissal of its challenge to the subject assessments.

There is some suggestion in the record that the Legislature may have made a "mistake" in using the year 2000 for calculating the phase-in because an earlier version of the Act was originally proposed in that year. The Act, however, did not pass until the 2002 session. Intervening versions of the Act restated the calendar years for implementing the phase-in but did not change the year 2000 for purposes of the comparison. On this issue, we find no clear indication that the decision to keep the year 2000 in subsequent versions of the Act was a legislative oversight. Even if it were, it would be for the Legislature to correct, not "[t]he courts [which] can only follow the clear and unequivocal language of the statute" (*Matter of Cheng San Chen v Toia*, 67 AD2d 1085, 1086 [1979], *affd* 50 NY2d 826 [1980]).

Notably, petitioner does not deny that its tax assessments will

---

* An actual example from one of the involved municipalities illustrates the problem. Petitioner's 2000 assessment ceiling for the City of Dunkirk was $1,731,791. Its 2002 assessment ceiling for that municipality was $1,247,821. Under the Act, its reduced ceiling without any phase-in limitation would have been $414,979. However, because of the phase-in limitation, the 2003 assessment ceiling is limited to 25% of the difference between the *2000* assessment and the assessment under the Act (i.e., $1,731,791 − $414,979 = $1,316,812 × .25 = $329,203 maximum benefit). Thus, the resultant 2003 ceiling is based on the 2000 ceiling of $1,731,791 minus $329,203, the phase-in limitation, or $1,402,588. The 2003 assessment ceiling is therefore higher than the 2002 assessment ceiling of $1,247,821.

ultimately decrease in these few aberrational municipalities once the phase-in period is complete thus achieving the stated legislative goal. Lastly, even if we were to agree with petitioner's argument that Supreme Court erred by deferring to the administrative agency's interpretation of the statute, our own reading of its unambiguous provisions indicates that the challenged determination must be upheld (*see Lorillard Tobacco Co. v Roth*, 99 NY2d 316, 322 [2003]). To the extent not discussed, petitioner's remaining arguments have been considered and rejected as without merit.

Mercure, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment affirmed, without costs.