MISSOURI ASSOCIATION OF NURSE
ANESTHETISTS, INC., Glenn Kunk-
el, M.D., and Kevin Snyders, CRNA,
Appellants,

v.

STATE BOARD OF REGISTRATION
FOR the HEALING ARTS,
Respondent.

No. SC 91302.

Supreme Court of Missouri,
En Banc.

June 28, 2011.

Thomas W. Rynard, James B. Deutsch, Blitz, Bardgett & Deutsch LC, Jefferson City, for Kunkel, Snyders and the Nurse Anesthetist Association.

Patricia J. Churchill, Edwin R. Frownfelter, Attorney General's Office, Jefferson City, for the Board.

Richard M. AuBuchon, Jefferson City, for Missouri Chamber of Commerce & Industry Inc., which filed a brief as a friend of the Court.

Marshall V. Wilson, Michael G. Berry, Berry Wilson LLC, Jefferson City, for American Association of Nurse Anesthetists, which filed a brief as a friend of the Court.

WILLIAM RAY PRICE, JR., Chief Justice.

## I. Introduction

The Missouri Association of Nurse Anesthetists, Inc. ("MANA"), Glen Kunkel, M.D., and Kevin Snyders, CRNA[1], (re-

---

1. "CRNA" signifies a certified registered nurse anesthetist: "a registered nurse who is currently certified as a nurse anesthetist by the Council on Certification of Nurse Anesthetists, the Council on Recertification of Nurse Anesthetists, or other nationally recognized certifying body approved by the board of nursing." Section 335.016(8), RSMo Supp. 2008.

ferred to collectively as "Appellants"), appeal the Cole County circuit court's grant of summary judgment in favor of the State Board of Registration for the Healing Arts ("the Board"). Appellants assert three points on appeal, contending that the trial court erred in granting the Board's motion for summary judgment and that they were, in turn, entitled to relief because: (1) the Board's letter failed to adhere to the public rulemaking requirements of section 334.125.2 [2] and the Missouri Administrative Procedure Act ("the act"); (2) the Board's letter exceeded the authority of the Board in so much as it defined the scope of practice for nurses; and (3) Appellants possessed standing to maintain an action against the Board.

The trial court's judgment is reversed, and the case is remanded.

## II. Facts and Procedural History

The Board, a state "agency," [3] is charged with the enforcement, implementation and administration of chapter 334, giving it authority over all licensed physicians, surgeons and midwives in the state of Missouri, including Dr. Kunkel. *See*

section 334.120, RSMo Supp.2007; section 334.155; section 334.125.[4]

Dr. Kunkel is an anesthesiologist, duly licensed to practice medicine pursuant to chapter 334. He practices in Rolla, Missouri with two APNs,[5] one of whom, Mr. Snyders, is also a CRNA. Dr. Kunkel frequently delegates certain professional responsibilities to Mr. Snyders, including the use of fluoroscopic procedures.[6]

MANA is a not-for-profit corporation whose members, such as Mr. Snyders, consist of CRNAs across the state of Missouri. MANA's purpose, among many others, is to facilitate cooperation between CRNAs and the medical profession and to promote standards and policies in the furtherance of the economic security of CRNAs.

In late 2007, the Board received a series of letters regarding the propriety of instances in which a physician delegates certain pain management procedures to APNs, namely the responsibility of injecting therapeutic agents under fluoroscopic control (the "procedure"). The Missouri State Medical Association ("the association") asserted that APNs were unquali-

2. All statutory references are to RSMo 2000, unless otherwise indicated.

3. " 'Agency' means any administrative officer or body existing under the constitution or by law and authorized by law or the constitution to make rules or to adjudicate contested cases, except those in the legislative or judicial branches; ..." Section 536.010(2), RSMo Supp.2006.

4. "There is hereby created and established a board to be known as 'The State Board of Registration for the Healing Arts' for the purpose of registering, licensing and supervising all physicians and surgeons, and midwives in this state." Section 334.120.1. "The provisions of [Chapter 334] shall apply to any licensee of this chapter performing tasks which education or licensure qualify him to perform, in any setting." Section 334.155;

"The board shall have a common seal and shall formulate rules and regulations to govern its actions." Section 334.125.

5. "APN" signifies an advanced practice nurse: "a nurse who has education beyond the basic nursing education and is certified by a nationally recognized professional organization as a certified nurse practitioner, certified nurse midwife, certified registered nurse anesthetist, or a certified clinical nurse specialist." Section 335.016(2), RSMo Supp. 2008.

6. Fluoroscopy is an imaging modality used to aid in pain management. It allows the user to visualize the precise location of pain medication injections, improving the safety and accuracy of such injections. Brief for the American Association of Nurse Anesthetist as Amici Curia Supporting Appellants, at 6.

fied to perform the procedure and requested that the Board adopt a position prohibiting physicians from delegating the procedure to APNs. Dr. Kunkel and a colleague opposed the association's request, arguing that APNs, in fact, were qualified.

The association's request was taken up by the Board at its October 25, 2007, meeting. Rather than render a position at that time, the Board directed one of its members and its legal counsel to investigate the matter. At the Board's next conference call, the Board passed a motion to notify the doctors and the association of its position.[7] Accordingly, on or about February 7, 2008, a letter was sent to the association and Dr. Kunkel stating, in pertinent part:

> After researching the current statute[s], rules, and regulations governing the practice of medicine and the practice of nursing it was the Board's decision to advise you that Chapter 334 RSMo authorizes a physician to delegate professional responsibilities to a person who is qualified by training, skill, competency, age, experience, or licensure to perform such responsibilities. *Based on the information provided to the Board, it was their opinion that [APNs] currently do not have the appropriate training, skill or experience to perform these injections.*
>
> If you disagree with the Board's interpretation please provide us with documentation that shows that advance practice nurses have the appropriate training, skill and experience to perform these injections.

(emphasis added). The Board did not follow any of the rulemaking procedures required under the act or section 334.125.2 to formally promulgate the position taken in its letter as a rule.

The association published a summary of the letter in the February 2008 issue of its monthly newsletter, *Progress Notes.* The newsletter is distributed to the association's physician members throughout Missouri. Dr. Kunkel, conversely, accepted the Board's invitation to provide additional documentation and requested that the Board amend its position. The Board was not persuaded and denied his request.

On April 22, 2009, Appellants filed a petition in the Cole County circuit court seeking multiple forms of relief. Appellants' petition sought a preliminary and permanent injunction prohibiting the Board from enforcing its "letter rule," a declaratory judgment that the alleged rule was void and of no effect, and, finally, an order directing the Board to disseminate a retraction of its "letter rule." The relief requested was rooted in two separate claims by Appellants: (1) the Board's letter failed to adhere to the public rulemaking requirements of section 334.125.2 and the act; and (2) the Board's letter exceeded the authority of the Board in so much as it defined the scope of practice for nurses.

The Board's answer to Appellants' petition admitted "the quoted statement is not a rule, it was not filed with the Secretary of State or the Joint Committee on Administrative rules, nor published." Thereafter, the Board filed a motion for summary judgment redoubling its assertion that its letter was not a rule:

> The letter at question in this case is merely an expression of the Board's po-

---

**7.** Appellants take issue with the content of the Board's motion to notify the concerned parties. The motion was made to notify the doctors and the association "that it is beyond the scope of practice for an advance practice nurse to inject therapeutic agents under fluoroscopic control." Ultimately, however, the motion's contents were not the substance of the notification that actually was sent to the doctors and the association.

sition and is without force and effect. It is a non-binding statement issued by the Board in response to correspondence it had received on the issue and does not have the force or effect of law. The Board does not seek to, and cannot seek to, take any action against a physician, [APN], or any other individual or entity, based on a contention that their actions are proscribed by the letter in question.

On March 22, 2010, the trial court granted the Board's motion for summary judgment and, in so doing, held that the statements contained in the Board's letter did "not constitute a rule as same is defined in [section] 536.010(6)." Though the trial court's judgment did not specifically address whether the Board exceeded its authority, the judgment effectively denied the claim by stating that "[a]ny other pending claims for relief, inconsistent with the above, are deemed denied." Appellants timely filed a notice of appeal and, following opinion by the court of appeals, this Court granted transfer December 21, 2010. Mo. Const. art. V, sec. 10.

On September 4, 2009, the Board filed a complaint against Dr. Kunkel. The claim is now pending before the Administrative Hearing Commission ("the commission") and is scheduled for final hearing on October 17, 2011. *State Board of Registration for the Healing Arts v. Glenn A. Kunkel, M.D.,* Case No. 09–1259 HA. The Board alleges that Dr. Kunkel improperly delegated professional responsibilities in violation of chapter 334. *Id.* Dr. Kunkel is not charged under the statements contained in the Board's letter, which are the subject of this case. *Id.* Rather, he is charged for acts that predate the issuance of the Board's letter, in violation of chapter 334. *Id.*

## III. Declaratory Judgment

■ At the outset, this Court must examine whether declaratory judgment is available for this dispute. Under section 536.050, RSMo Supp.2005, Missouri courts are granted the power to render declaratory judgments respecting the validity of rules. However, this Court has held that the provisions of section 536.050 only apply if a plaintiff can "plead and establish specific facts that a promulgated rule was the basis of the [agency's] action." *United Pharmacal Co. of Missouri Inc. v. Missouri Bd. of Pharmacy,* 159 S.W.3d 361, 367 (Mo. banc 2005). Here, it is undisputed that the Board made no attempt to promulgate the statements contained in its letter. Because there is no promulgated rule at issue here, or at least a rule that purports to have been promulgated, section 536.050 is not applicable.

However, Missouri's declaratory judgment act provides that Missouri courts "have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 527.010. "Moreover, the declaratory judgment statutes are 'to be liberally construed,' [section] 527.120, and administered to 'terminate the controversy or remove an uncertainty.' [section] 527.050. Rule 87 reinforces the provisions of the declaratory judgment statutes, providing that 'anyone may obtain such relief in any instance in which it will terminate a controversy or remove an uncertainty.' Rule 87.02(d)." *Kansas City Power & Light Co. v. McBeth,* 322 S.W.3d 525, 530 (Mo. banc 2010); *see also Group Health Plan, Inc. v. State Bd. of Registration for the Healing Arts,* 787 S.W.2d 745, 749 (Mo.App.1990) (In the context of a declaratory judgment action, "[c]ertainly, if jurisdiction lies to consider the threatened application of rules, it lies to consider the threatened application of statutes.").

■ "To grant a declaratory judgment, the court must be presented with: (1) a

justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake . . . ; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law." *Missouri Soybean Ass'n v. Missouri Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. banc 2003).

## A. Justiciable Controversy

The first element of a declaratory judgment action clearly is met. A genuine disagreement and substantial controversy exists between the parties as to whether physicians may appropriately delegate the procedure to APNs and, in turn, whether APNs may perform the procedure.

## B. Legally Protectable Interest

■ Whether a plaintiff has a legally protectable interest is an issue of standing. *See Kansas City Power & Light Co.*, 322 S.W.3d at 530; *Battlefield Fire Prot. Dist. v. City of Springfield*, 941 S.W.2d 491, 492 (Mo. banc 1997) ("When seeking declaratory or injunctive relief, the criterion for standing is whether the plaintiff has a legally protectable interest at stake."). "A legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute." *Kansas City Power & Light Co.*, 322 S.W.3d at 530.

■ Dr. Kunkel, undoubtedly, is directly and adversely impacted by the Board's statements. As a licensee of the Board, he is subject to its authority. Failure to adhere to the standards set by the Board's letter risks initiation of disciplinary proceedings against Dr. Kunkel, thereby jeopardizing his license to practice medicine. This point is confirmed by the subsequent initiation of disciplinary action against Dr. Kunkel.

■ Mr. Snyders, as an APN who regularly performs the procedure, also has a legally protectable interest at stake. While APNs are not subject to the Board's authority, APNs such as Mr. Snyders are adversely impacted by the Board's letter because, if doctors cannot delegate the procedure to them, APNs cannot perform certain procedures they previously have been allowed to perform.

■ Likewise, MANA has "associational standing" to bring the action on behalf of its members. "An entity has associational standing if: 1) its members would otherwise have standing to bring suit in their own right; 2) the interests it seeks to protect are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Missouri Bankers Ass'n v. Dir. of Missouri Div. of Credit Unions*, 126 S.W.3d 360, 363 (Mo. banc 2003). MANA seeks to protect its members' right to engage in their profession and participate in a collaborative practice between APNs and physicians. The final requirement is met because the relief requested— invalidation of the Board's statements—"is prospective only, and no request was made for money damages or some other relief that is specific to individual members." *Id.* at 363.

## C. Ripe for Judicial Determination

■■ "[T]he ripeness doctrine allows a court 'to apply a pragmatic test to determine whether the agency action is sufficiently binding and sufficiently clear in scope and implications to be susceptible to judicial evaluation. . . .'" *Missouri Soybean*, 102 S.W.3d at 25 (quoting Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 15.1, at 306 (3d

ed.1994)). "Determining whether a particular case is ripe for judicial resolution requires a two-fold inquiry: a court must evaluate (1) whether the issues tendered are appropriate for judicial resolution, and (2) the hardship to the parties if judicial relief is denied." *Id.* at 27.

Regarding the fitness of the issue for judicial resolution, the letter expresses the Board's opinion that APNs do not have the appropriate training, skill or experience to perform fluoroscopic injections. The record clearly demonstrates that the Board has finished development of its policy, as evidenced by its attempt to enforce its position through a disciplinary proceeding filed against Dr. Kunkel. No further factual development is required for judicial resolution.

As to the second factor, several states have addressed hardship as it relates to threatened agency action. *See Alternate Fuels, Inc. v. Dir. of Illinois E.P.A.,* 215 Ill.2d 219, 294 Ill.Dec. 32, 830 N.E.2d 444, 451–52 (2004); *Lorillard Tobacco Co. v. Roth,* 99 N.Y.2d 316, 756 N.Y.S.2d 108, 786 N.E.2d 7, 10 n. 3 (2003). Those cases recognize the need for judicial resolution when plaintiffs are faced with the dilemma physicians now face: comply or "take a potentially more costly alternative of risking serious penalties by continuing and waiting for the ax of Agency prosecution to fall...." *Alternate Fuels,* 294 Ill.Dec. 32, 830 N.E.2d at 452; *see also State ex rel. Glendinning Companies of Connecticut, Inc. v. Letz,* 591 S.W.2d 92, 98 (Mo.App. 1979). APNs, in turn, cannot perform the procedure if physicians are unable to delegate it to them. Appellants' hardship is imminent and certain and, accordingly, the issue is ripe for review. *See Glendinning,* 591 S.W.2d at 98 ("It is just such uncertainty as this that the declaratory judgment provision ... is designed to settle."); *Alternate Fuels,* 294 Ill.Dec. 32, 830

N.E.2d at 451–52; *Lorillard,* 756 N.Y.S.2d 108, 786 N.E.2d at 10 n. 3.

### D. Inadequate Remedy

■ In the context of this action, inadequacy touches on two concepts: the adequacy of some other judicial remedy and the adequacy of an administrative remedy. The former is not in contention. However, the adequacy of an administrative remedy is disputed by the Board.

■ As a general rule, declaratory relief is unavailable if the party who seeks it has failed to exhaust all available administrative remedies provided by statute. *Council House Redevelopment Corp. v. Hill,* 920 S.W.2d 890, 892 (Mo. banc 1996); *Schierding v. Missouri Dental Bd.,* 705 S.W.2d 484, 487 (Mo.App.1985). Courts have recognized that an adequate remedy is not available, and an exception to the exhaustion of administrative remedies doctrine arises, "where the applicable administrative procedure must be commenced by the agency and the agency has failed to commence any proceeding. A party threatened by agency action may invoke the court's jurisdiction to grant declaratory judgment against the agency." *Farm Bureau Town & Country Ins. Co. of Missouri v. Angoff,* 909 S.W.2d 348, 354 (Mo. banc 1995); *See also Group Health Plan,* 787 S.W.2d at 749 (Mo.App.1990) (holding that exhaustion of remedies was not required when plaintiffs were threatened by an agency with application of a statute). The Court in *Farm Bureau,* however, held that the exception would not apply when the commencement of the threatened administrative procedure began approximately 30 days from the filing of the declaratory judgment action. *Farm Bureau,* 909 S.W.2d at 354.

APNs, though sufficiently impacted by the Board's letter, are not subject to the authority of the Board and, therefore, have

no administrative remedy available to challenge the Board's letter. *See* section 334.155 (chapter 334 does not apply to "nurses licensed and lawfully practicing their profession within the provisions of Chapter 335."). Dr. Kunkel, on the other hand, is a licensee subject to the Board's authority and the Board has initiated disciplinary proceedings against him. The Board would argue that Dr. Kunkel has access to an administrative remedy via the administrative proceeding.

Here the Board waited nearly four and a half months after this action was filed to initiate an administrative proceeding against Dr. Kunkel and nearly a year and a half after it issued its letter. Physicians should not be foreclosed from declaratory judgment for that span of time and forced to practice their profession at the mercy of the Board, thereby jeopardizing their license to practice. *Compare Sermchief v. Gonzales,* 660 S.W.2d 683 (Mo. banc 1983) (where declaratory action was permitted for threatened action) *with Schierding,* 705 S.W.2d 484 (where declaratory action filed subsequent to initiation of the commission proceeding, declaratory relief is inappropriate); *See also Glendinning,* 591 S.W.2d 92 (holding declaratory relief was available to plaintiffs for threatened application of regulation after agency action was filed, but hearing had not been held); *Alternate Fuels,* 294 Ill.Dec. 32, 830 N.E.2d at 452 (though discussed under ripeness, court recognized the compelling need to hear the declaratory judgment action in the face of agency's threat of enforcement); *Lorillard,* 756 N.Y.S.2d 108, 786 N.E.2d at 10 n. 3 (again, though discussed under ripeness, the court recognized a need to hear the declaratory judgment action). Because of the Board's delay in initiating proceedings against Dr. Kunkel well after Appellants filed this action, declaratory judgment is appropriate.

## IV. Standard of Review

Appellate review of a trial court's grant of summary judgment is *de novo. Southers v. City of Farmington,* 263 S.W.3d 603, 608 (Mo. banc 2008). "For summary judgment to be entered in its favor, the movant has the burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law." *Turner,* 318 S.W.3d at 664; Rule 74.04.

The parties to this action do not contest the trial court's determination that there are no genuine issues of material fact in this case. Rather, the issue on appeal is whether the trial court erred in determining the Board was entitled to summary judgment as a matter of law. *See generally Purcell v. Cape Girardeau County Comm'n,* 322 S.W.3d 522, 524 (Mo. banc 2010).

## V. The Letter is Void and of No Legal Effect as a "Rule"

"Whether an agency decision should be promulgated as a rule is a determination that is guided by section 536.010(6) . . . ." *Dep't of Soc. Services, Div. of Med. Services v. Little Hills Healthcare, L.L.C.,* 236 S.W.3d 637, 641 (Mo. banc 2007). Section 536.010(6) of the act provides that the term "rule" means "each agency statement of *general applicability* that implements, *interprets, or prescribes law or policy,* or that describes the organization, procedure, or practice requirements of any agency [subject to certain exceptions]." (Emphasis added).

Section 536.021.1, RSMo Supp.2004, outlines the rulemaking procedures necessary to properly promulgate a rule:

No rule shall hereafter be proposed, adopted, amended or rescinded by any state agency unless such agency shall first file with the secretary of state a

notice of proposed rulemaking and a subsequent final order of rulemaking, both of which shall be published in the Missouri Register by the secretary of state as soon as practicable after the filing thereof in that office. . . .

Additionally, section 334.125.2 dictates that, for a rule to become effective, the Board must submit any proposed rules to the joint committee on administrative rules, pursuant to section 536.024, RSMo Supp.2005.[8]

While section 536.010(6) specifies the nature of a "rule," sections 536.021 and 334.125 prescribe the procedures that must be followed for an agency's statement to carry the force and effect of law as a "rule." Section 536.021.7, RSMo Supp. 2006, provides that ". . . any rule . . . shall be null, void and unenforceable unless made in accordance with the provisions of [section 536.021]."[9] *NME Hospitals, Inc. v. Dep't of Soc. Services, Div. of Med. Services*, 850 S.W.2d 71, 74 (Mo. banc 1993) ("A rule adopted in violation of [section] 536.021 is void."). This Court has explained that "something that is void is null; ineffectual; nugatory; having no legal force or binding effect." *United Pharmacal*, 159 S.W.3d at 365 (quoting *R.E.J., Inc. v. City of Sikeston*, 142 S.W.3d 744, 745 (Mo. banc 2004)).

■ The Board's letter states "[APNs] currently do not have the appropriate training, skill or experience to perform these injections [in accordance with the requirements of chapter 334]." Whatever

the Board's intent, its letter was written with language that is generally applicable to all physicians and APNs. The letter's language was not confined to a specific set of facts, but instead has a future effect and potential impact on any physician wishing to delegate the procedure to an APN and, in turn, on any APN wishing to engage in the procedure. *See Little Hills Healthcare, L.L.C.*, 236 S.W.3d at 642 ("Any agency announcement of policy or interpretation of law that has future effect and acts on unnamed and unspecified facts is a 'rule.' ").

■ "[C]hanges in statewide policy are rules within the meaning of the Administrative Procedure Act." *NME Hospitals*, 850 S.W.2d at 75. The Board's letter is a statement of general applicability that interpreted the law and prescribed policy. It required promulgation, pursuant to section 536.021, to have any force and effect of law as a "rule." *See Id.* at 74 ("Failure to follow rulemaking procedures renders void purported changes in statewide policy."). There is no dispute that the Board failed to comply with the rulemaking procedures prescribed by sections 536.021 and 334.125. The letter is void and of no legal effect as a "rule."

■ The letter is "merely an expression of the [B]oard's interpretation of law without any force and legal effect." *United Pharmacal*, 159 S.W.3d at 365. While the trial court was correct that the letter is not a "rule," summary judgment was im-

8. "No rule or portion of a rule promulgated under the authority of [chapter 334] shall become effective unless it has been promulgated pursuant to the provisions of section 536.024 . . ." Section 334.125.2; "2. Upon filing any proposed rule with the secretary of state, the filing agency shall concurrently submit such proposed rule to the joint committee on administrative rules, which may hold hearings upon any proposed rule or portion thereof at any time. 3. A final order of rulemaking

shall not be filed with the secretary of state until thirty days after such final order of rulemaking has been received by the committee." Section 536.024

9. Though not applicable here, section 536.025 does allow for the promulgation of a rule, in emergency situations, without following the provisions of section 536.021.

properly entered on the Board's behalf. In fact, the Board conceded that the letter is not a rule in its answer and motion for summary judgment. Concession of an issue does not entitle a party to summary judgment in its favor.

It is Appellants who are entitled to a declaratory judgment that the Board's letter is void and of no effect as a "rule." As such, Appellants also are entitled to an injunction prohibiting the Board from enforcing its letter as a "rule." [10]

## VI. The Board's Authority

■ Appellant's second point on appeal claims, regardless of whether the Board's letter is a rule or not, that the trial court erred in granting summary judgment for the Board because the Board was without authority to make policies, interpretations or determinations that define the scope of practice for APNs in light of *Sermchief.* 660 S.W.2d 683. Appellants' petition does not seek a declaration that APNs may lawfully perform the procedure, but instead seeks invalidation and retraction of the letter based solely on the assertion that the Board lacked any authority to make a determination that defined the scope of practice for APNs.

The authority of the Board is set out in the provisions of chapter 334. The Board was created for the express purpose of "registering, licensing and supervising all physicians and surgeons, and midwives in this state." Section 334.120.1. Section 334.100.2, RSMo Supp.2010, grants the Board authority to file complaints with the commission against a licensed physician. A list of causes for such complaints is outlined in section 334.100.2, including instances in which the Board determines a licensed physician to be "[d]elegating professional responsibilities to a person who is not qualified by training, skill, competency, age, experience or licensure to perform such responsibilities; ...." Section 334.100.2(4)(d). Upon a finding by the commission that the cause is met, the Board may discipline the accused physician.[11] Section 334.100.4.

Section 334.155.2, however, sets forth that the provisions of chapter 334 do not apply to "nurses licensed and lawfully practicing their profession within the provisions of chapter 335." Furthermore, that section explicitly states that "[t]he provisions of [chapter 334] shall not prevent a licensed physician from referring a patient to or delegating responsibilities to" nurses licensed and lawfully practicing

**10.** While the first two remedies sought by Appellants speak to the legal effect of the Board's letter, Appellants' request for an order of retraction goes directly to whether the Board possessed the authority to disseminate the letter at all, which is discussed below.

**11.** Section 334.100.4 provides:
After the filing of such complaint before the administrative hearing commission, the proceedings shall be conducted in accordance with the provisions of chapter 621, RSMo. Upon a finding by the administrative hearing commission that the grounds, provided in subsection 2 of this section, for disciplinary action are met, the board may, singly or in combination, warn, censure or place the person named in the complaint on probation on such terms and conditions as

the board deems appropriate for a period not to exceed ten years, or may suspend the person's license, certificate or permit for a period not to exceed three years, or restrict or limit the person's license, certificate or permit for an indefinite period of time, or revoke the person's license, certificate or permit, or administer a public or private reprimand, or deny the person's application for a license, or permanently withhold issuance of a license or require the person to submit to the care, counseling or treatment of physicians designated by the board at the expense of the individual to be examined, or require the person to attend such continuing educational courses and pass such examinations as the board may direct.

their profession within the provisions of chapter 335.[12] Section 334.155.3.

Chapter 335 governs the practice and licensure of nurses in Missouri. The Missouri State Board of Nursing (the "Board of Nursing") is charged with enforcing chapter 335. *See* section 335.036, RSMo Supp.2006. Section 335.016(15), RSMo Supp.2008, defines the scope of practice for "professional nursing" as:

> the performance for compensation of any act which requires substantial specialized education, judgment and skill based on knowledge and application of principles derived from the biological, physical, social and nursing sciences, including, but not limited to:
>
> . . .
>
> (c) The administration of medications and treatments as prescribed by a person licensed by a state regulatory board to prescribe medications and treatments; . . . .

This Court has explained that the qualifying phrase "including, but not limited to" evidences intent by the legislature "to avoid statutory constraints on the evolution of new functions for nurses delivering health services." *Sermchief,* 660 S.W.2d at 690. "Under [section 335.016(15)], a nurse may be permitted to assume respon-sibilities heretofore not considered to be within the field of professional nursing so long as those responsibilities are consistent with her or his 'specialized education, judgment and skill based on knowledge and application of principles derived from the biological, physical, social and nursing sciences.'" *Id.*

The interplay of chapters 334 and 335 is highlighted further by section 334.104, RSMo Supp.2009, which permits physicians to enter into "collaborative practice arrangements" with registered professional nurses.[13] Such agreements,

> which shall be in writing, may delegate to a registered professional nurse the authority to administer or dispense drugs and provide treatment as long as the delivery of such health care services is within the scope of practice of the registered professional nurse and is consistent with that nurse's skill, training and competence.

*Id.* The Board and the Board of Nursing, in accordance with their respective governing chapters, "may jointly promulgate rules regulating the use of collaborative practice arrangements," with such rules only taking effect after they have been approved by a majority vote of a quorum of each board.[14] *Id.* "Neither [the Board]

---

12. Section 334.155 provides:
    2. This chapter does not apply to . . . to nurses licensed and lawfully practicing their profession within the provisions of chapter 335, . . .
    3. The provisions of this chapter shall not prevent a licensed physician from referring a patient to or delegating responsibilities to the professions exempted by subsection 2 of this section.

13. "A 'registered professional nurse' or 'registered nurse', [is] a person licensed pursuant to the provisions of [Chapter 335] to engage in the practice of professional nursing; . . ." Section 335.016(16).

14. Section 334.104.4 provides:

The Board pursuant to section 334.125 and the [B]oard of [N]ursing pursuant to section 335.036, RSMo, may jointly promulgate rules regulating the use of collaborative practice arrangements. Such rules shall be limited to specifying geographic areas to be covered, the methods of treatment that may be covered by collaborative practice arrangements and the requirements for review of services provided pursuant to collaborative practice arrangements including delegating authority to prescribe controlled substances. Any rules relating to dispensing or distribution of medications or devices by prescription or prescription drug orders under this section shall be subject to the approval of the state board of pharmacy. Any rules relating to dispensing or dis-

nor the [B]oard of [N]ursing may separately promulgate rules relating to collaborative practice arrangements." *Id.* Section 334.104 reveals the legislature's intent that the Board and the Board of Nursing concur with one another regarding any attempt to regulate procedures delegated under collaborative practice arrangements.[15]

Appellants contend that *Sermchief* sets forth the proposition that any action by the Board limiting the practice of nursing exceeds the Board's authority. In *Sermchief,* the Board threatened the appellant nurses with an action for the unauthorized practice of medicine. *Sermchief,* 660 S.W.2d at 688. The nurses responded by filing for injunctive relief and a declaratory judgment that the nurses' practices were authorized under chapter 335 and, therefore, the provisions of chapter 334 were not applicable to them. *Id.* The Court noted the "thin and elusive line that separates the practice of medicine and the practice of professional nursing in modern day delivery of health services," holding that the practices complained of by the Board were authorized by chapter 335 and, accordingly, "[did] not constitute the unlawful practice of medicine for the reason that [section] 334.155 makes the provisions of Chapter 334 inapplicable to 'nurses licensed and lawfully practicing their pro-

fession within the provisions of Chapter 335.'" *Id.* at 688–90.

Here, Appellants do not seek a declaration that the procedure is authorized under chapter 335 and the Board does not threaten action against nurses. The Board's letter is a statement regarding a procedure that the Board believes cannot be delegated by physicians to APNs. The Board has the authority, pursuant to section 334.100.2(4)(d), to file a proceeding with the commission against a physician for delegation of "professional responsibilities to a person who is not qualified. . . ." To this extent, Appellants reliance upon *Sermchief* is misplaced.

However, the Board's letter is premised on a conclusion that "[APNs] currently do not have the appropriate training, skill, or experience to perform these injections." It is unclear whether the Board is attempting to regulate the practice of physicians, which it is empowered to do, or to regulate the practice of nursing, which it is not.

The parties have submitted this issue to the Court as a matter of law. The record is bereft of evidence as to the contents of the collaborative practice arrangement under which any physician and APN were practicing or whether their practice violated regulations jointly promulgated by the Board and the Board of Nursing, pursuant to section 334.102.3. Neither does the rec-

tribution of controlled substances by prescription or prescription drug orders under this section shall be subject to the approval of the department of health and senior services and the state board of pharmacy. In order to take effect, such rules shall be approved by a majority vote of a quorum of each board. Neither the [Board] the [B]oard of [N]ursing may separately promulgate rules relating to collaborative practice arrangements. Such jointly promulgated rules shall be consistent with guidelines for federally funded clinics. The rulemaking authority granted in this subsection shall not extend to collaborative practice arrangements of hospital employees provid-

ing inpatient care within hospitals as defined pursuant to chapter 197, RSMo, or population-based public health services as defined by 20 CSR 2150–5.100 as of April 30, 2008.

15. Section 334.104.5 may also be implicated if, after the commission proceeding, the Board seeks to "deny, revoke, suspend or otherwise take disciplinary action against a physician for health care services delegated to a registered professional nurse provided the provisions of [section 334.104] and the rules promulgated thereunder are satisfied."

ord reveal the actual skill, training and experience of physicians or nurses necessary to perform this procedure or of the custom and practice of the medical industry regarding this procedure. The record does not support summary judgment as a matter of law.

## VII. Conclusion

The judgment is reversed, and the case is remanded.

All concur.