*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 25, 2015                    519039
_____

In the Matter of CONTEMPORARY
    SERVICES CORPORATION et al.,
                    Petitioners,
        v                                    MEMORANDUM AND JUDGMENT

CESAR A. PERALES, as Secretary
    of State, et al.,
                    Respondents.
_____

Calendar Date:  April 28, 2015

Before:  Peters, P.J., Lahtinen, McCarthy and Rose, JJ.

_____

        Hinman Straub, PC, Albany (James T. Potter of counsel), for petitioners.

        Eric T. Schneiderman, Attorney General, Albany (Allyson B. Levine of counsel), for respondents.

_____

Lahtinen, J.

        Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Secretary of State which imposed a civil penalty upon petitioner Contemporary Services Corporation.

        Petitioner Contemporary Services Corporation (hereinafter CSC) is an event management company that provides various services at major sporting and entertainment venues throughout the United States as well as internationally.  Its many services include, as relevant here, providing security guards.  Respondent Department of State received a complaint that, when CSC provided

its services for the 2009 US Open Tennis Tournament, it failed to comply with New York's Security Guard Act (see General Business Law art 7-A). As a result, the Department — through its Division of Licensing Services — conducted an investigation that resulted in allegations of hundreds of violations by CSC and its qualifying officer, petitioner Henry R. Zazzi. The violations regarding security guards included allegedly failing to comply with various categories of "due diligence" in determining qualifications of and reporting information about such individuals as required by statute and regulation (see General Business Law § 89-g; 19 NYCRR 174.6). Following a hearing, an Administrative Law Judge sustained 287 of the alleged 535 violations and imposed a fine of $1,000 per offense for a total of $287,000. Respondent Secretary of State (hereinafter respondent) reduced the number of violations to 284 and, correspondingly, reduced the fine to $284,000. Petitioners commenced this CPLR article 78 proceeding challenging 219 of the violations — all of which pertain to security guards — and also contending that the penalty was an abuse of discretion as to all violations.

Petitioners argue that respondent's determination as to the disputed 219 violations was arbitrary and capricious, contrary to law and not supported by substantial evidence. More specifically, they assert that respondent used a definition of security guard that was inconsistent with the statutes and regulations. As a general matter, "an agency's interpretation of the statutes it administers must be upheld absent demonstrated irrationality or unreasonableness, but where the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" (Lorillard Tobacco Co. v Roth, 99 NY2d 316, 322 [2003] [internal quotation marks and citations omitted]). Although the Department is charged with administering integral parts of the statute (see e.g. General Business Law § 89-g [1] [b]; [2]) implicating the deferential approach to its statutory construction, nonetheless, even if this were considered a situation of pure statutory analysis, we would find petitioners' contention unpersuasive.

By way of background, the Security Guard Act was designed to "establish uniform standards for the employment, registration [and] training . . . of security guards," and the Act was undergirded by legislative findings that "the proper screening, hiring and training of security guards is a matter of state concern and [there is a] compelling state interest to ensure that such security guards meet certain minimum recruitment and training standards" (L 1992, ch 336, § 1). The statute prohibits a security guard company from employing a person as a security guard unless the company has either verified with the Department that the individual has a current Department issued registration card or the company has submitted detailed information about the individual in compliance with the Department's regulations (see General Business Law § 89-g [1] [a], [b]). A security guard is defined to include a person employed to "principally perform" various listed functions (General Business Law § 89-f [6]). The regulations further refine "principally perform" to include a person armed with a weapon (see 19 NYCRR 170.1 [c] [2]) or dressed in a military style uniform (see 19 NYCRR 170.1 [c] [3]) or, as relevant in this proceeding, a person who spends more than 50% of his or her regularly scheduled work hours engaged in the security-related functions (see 19 NYCRR 170.1 [c] [1]).

Petitioners acknowledge that CSC hired over 500 individuals designated as security guards, but it needed less than 200, and it would often assign individuals to tasks other than security-related functions. Thus, petitioners urge that it was the Department's burden to prove that each of the relevant employees actually performed security guard functions for more than 50% of his or her working hours. However, the regulations and respondent's application thereof are consistent with the legislative purpose and statutory scheme of ensuring a certain level of competence at the time of hiring and before a person is placed in contact with the public as a security guard. The statute points to prospective compliance when hiring to ensure that individuals who can be assigned by the employer to security guard work have satisfied minimum requirements (see General Business Law § 89-g [1]). The statute also mandates due diligence by the employer in prospectively verifying information about potential security guards (see General Business Law § 89-g [2]). Although CSC may not have actually planned to use all of

the individuals it hired as security guards in a capacity that would meet the regulatory definition, it nevertheless designated them as security guards and retained the power to assign those individuals to security-related duties for more than half their work schedules. In light of the statutory requirement of prospective compliance, respondent acted consistent with the statutes and regulations in requiring compliance at the time of hiring under these circumstances.

The remaining arguments do not require extended discussion. There is substantial evidence, including, among other things, CSC's own employment records, supporting respondent's determination (see generally Matter of Bernstein v Department of State, Div. of Licensing Servs., 96 AD3d 1183, 1185 [2012]; cf. Matter of 2169 Cent. Ltd. v New York State Liq. Auth., 110 AD3d 1310, 1311-1312 [2013]). The penalty, while severe, is not "so disproportionate to the offense . . . as to be shocking to one's sense of fairness" (Matter of JMH, Inc. v New York State Liq. Auth., 61 AD3d 1260, 1262-1263 [2009] [internal quotation marks and citations omitted]; see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 233 [1974]), particularly since CSC settled a similar disciplinary action about one year earlier and given the extensive nature of the current violations.

Peters, P.J., McCarthy and Rose, JJ., concur.

ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

ENTER:

Robert D. Mayberger
Clerk of the Court